**In re Vickie Pullen KNIPPING, Debtor.**

**Bankruptcy No. 584–00246–M.**

United States Bankruptcy Court,
W.D. Louisiana,
Monroe Division.

June 26, 1984.

---

James M. Fowler, Jonesboro, La., for debtor.

R. Douglas Wood, Jr., Monroe, La., for Louisiana Bank of Ouachita Parish.

Paul H. Davidson, Shreveport, La., Chapter 13 Standing Trustee.

## FINDINGS OF FACT

LeROY SMALLENBERGER, Bankruptcy Judge.

The debtor filed an amended Chapter 13 plan of reorganization. Objections to the confirmation of the amended plan were filed by Central Bank, Jackson Parish Bank, and Louisiana Bank of Ouachita Parish.

Central Bank's objection appears to be satisfied by the filing of a modified Chapter 13 plan of reorganization, on April 30, 1984, which plan proposes to "return the Certificate of Deposit in cancellation of debt". The debt is stated on the Proof of Claim to be $17,119.75, secured by assignment of a $20,000 Certificate of Deposit.

The objection to Jackson Parish Bank relates primarily to the co-debtor stay of section 1301. The Bank has requested relief from the stay as to the principal obligor, Denise Pullen. The April 30, 1984, modified Chapter 13 plan recognizes the debtor as a co-debtor and accordingly proposes a distribution in satisfaction of section 1325(a)(4). This objection appears to be satisfied.

Louisiana Bank of Ouachita Parish filed an objection to the amended Chapter 13 plan of reorganization on the grounds that:

(1) The value assigned to the debtor's house did not reflect the true value of her house;

(2) Certain debts which were to be handled outside of the plan were shown as having a balance which was four to five times the true balance owed on the indebtedness; and

(3) The liquidation standards used by the debtor's attorney to determine what percent the unsecured creditors would receive in a straight Chapter 7 proceeding were erroneous.

The Court finds that the issue of the true value of the debtor's house is resolved by the offer by the LBO Bancorp, Inc., to purchase the debtor's house for $63,500.00, with LBO Bancorp, Inc. to buy the property "as is" and be responsible for all closing costs. The current balance on the mortgage on the debtor's house is $34,505.40. Therefore, this sale will result in net income to the estate of approximately $13,995.00 after deducting the first mortgage payoff and the $15,000.00 homestead exemption from the sale price.

The second objection by Louisiana Bank of Ouachita Parish was based on the debtor's statement in District 5 Federal Highway Credit Union. This objection has been satisfied by the debtor amending his plan to show that only $1,188.00, not $5,500.00 was owed to this creditor.

The third objection made by the Louisiana Bank of Ouachita Parish centers around whether the present value of deferred payments made to unsecured creditors over 60 months equal the present value of a distribution that would be made to such creditors should the debtor's estate be liquidated in a Chapter 7 bankruptcy.

In determining the liquidation value of the debtor's estate the Court must determine the value of the debtor's automobile. The debtor's attorney has informed the Court that the NADA wholesale value of this car is $4,662.00, and this is the value that the Court sets on the automobile.

The table below sets out the assets available for liquidation. The table lists the value of each asset, and the amount of the lien against that asset. The Court is to compare the Chapter 13 distribution to a Chapter 7 liquidation; therefore, a trustee's fee should be deducted from the amount available for distribution to unsecured creditors upon liquidation.

| | | |
|---|---|---|
| Net Sales Price of House | $63,500.00 | |
| Less Mortgage Payoff | (34,505.00) | |
| Less Homestead Exemption | (15,000.00) | |
| Funds Available | | $13,995.00 |
| Certificate of Deposit | $20,000.00 | |
| Less Debt Owed for Which | | |
| Certificate is Pledged to Secure | (17,120.00) | |
| Funds Available | | $ 2,880.00 |

| | | |
|---|---|---|
| 1980 Oldsmobile Cutlass | $ 4,662.00 | |
| Less Debt on Chattel Mortgage | ( 1,188.00) | |
| Funds Available | | $ 3,474.00 |
| Funds Available From Assets in Excess of Liens on Assets | | $20,349.00 |
| Less Trustee's Fee in Chapter 7 | | |
| Total Assets = $88,162.00 | | |
| 1000 × 0.15 = 150 | | |
| 2000 × 0.06 = 120 | | |
| 17000 × 0.03 = 510 | | |
| 30000 × 0.02 = 600 | | |
| 38162 × 0.01 = 382 | | |
| | | ($1,762.00) |
| Net Funds Available for Distribution to Unsecured Creditors | | $18,587.00 |

## CONCLUSIONS OF LAW

The Court found that the debtors house is to be valued at $63,500.00 for the purpose of determining the liquidation value of the debtor's estate.

Section 1325(a)(4) specified that in order for a Chapter 13 plan to be confirmed the following requirement must be met:

"the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date."

The following explanation of section 1325(a)(4) appears in *Collier on Bankruptcy,* Section 1325.01[ii] 1983 at page 1325–11:

"Section 1325(a)(4) dictates that the Chapter 13 Plan offer the holder of each allowed unsecured claim property, including deferred payments of a *present value* not less than the liquidated value of such claim. In other words, the proposed payments, by converting deferred payments offered the creditor into an equivalent capital sum as of the effective date of the plan. Section 1325(a)(4) cannot be properly applied simply by comparing the sum total of the proposed deferred payments with the likely recovery on the unsecured claim in the event of liquidation."

The plan calls for unsecured creditors to be paid a total of $11,255.00. However, these payments are to be made over a period of 60 months with the unsecured creditors receiving $187.58 per month. The $11,255.00 figure must be discounted in order to comply with the requirements of Section 1325(a)(4). This Court has recently held that under the present interest rate structure that 12% is an appropriate discount factor. Discounting $187.58 per month over 60 months at 12% per annum gives a present value of approximately $8,500.00. Since the unsecured creditors would receive approximately $18,587.00 upon liquidation, then the Court can not confirm the proposed Chapter 13 plan of reorganization.

The debtor is instructed by the Court to either amend the Chapter 13 plan of reorganization to pay to the unsecured creditors the deferred payments with a present value equal to $18,587.00 or to dismiss or convert the case to a Chapter 7 liquidation.