**In re James Luther JOHNSON, Jr., Amanda Hendrix Johnson, Debtors.**

**GENERAL MOTORS ACCEPTANCE CORPORATION, Movant,**

v.

**James Luther JOHNSON, Jr., Amanda Hendrix Johnson, Respondents.**

**In re James Larry HALL, Jr., Deborah F. Hall, Debtors.**

**GENERAL MOTORS ACCEPTANCE CORPORATION, Movant,**

v.

**James Larry HALL, Jr., Deborah F. Hall, Respondents.**

**Bankruptcy Nos. 91–60682, 91–60628.**

United States Bankruptcy Court, S.D. Georgia, Statesboro Division.

Sept. 9, 1992.

R. Kenny Stone, Edenfield, Stone & Cox, Statesboro, Ga., for movant.

John Robert Thompson, Swainsboro, Ga., for debtors in No. 91–60682.

J. Michael Hall, Ratchford, Hall & Godlove, Statesboro, Ga., for debtors in No. 91–60628.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

This order consolidates related matters pending before the court in connection with objections to confirmation by General Motors Acceptance Corporation ("GMAC") in each of the above Chapter 13 cases, which objections raise related legal issues concerning valuation of a secured creditor's collateral. Based on the evidence presented at the respective confirmation hearings and relevant legal authorities, I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Concerning Chapter 13 case No. 91–60682, on March 4, 1991 GMAC loaned James Larry Hall, Jr. Eight Thousand Five Hundred Forty–Eight and 75/100 ($8,548.75) Dollars to purchase a 1991 Chevrolet 1JC37 automobile, VIN # 1G1JC14G5M7167534. GMAC retained a security interest in the automobile. James Larry Hall, Jr. and Deborah F. Hall filed a joint Chapter 13 petition on December 3, 1991. GMAC filed a proof of secured claim in the Halls' case for Nine Thousand Two Hundred Twenty-Four and 34/100 ($9,224.34) Dollars and another proof of claim reflecting a priority claim for Three Hundred Twenty-Five and No/100 ($325.00) Dollars. No objection to GMAC's proofs of claim was filed. By motion as part of the proposed Chapter 13 plan the debtors seek to value GMAC's collateral at Six Thousand Six Hundred Sixty–Two and No/100 ($6,662.00) Dollars. Under the Halls' pro-

posed plan secured creditors will be paid through disbursements from the Chapter 13 trustee the amount of their claims or the value of their collateral, as set forth in the plan, whichever is less.

GMAC contends the value of its collateral, for the purpose of establishing the amount of its secured claim, should be determined as of the date the Halls filed their Chapter 13 petition. The Halls contend the value of the collateral should be determined as of the date of the confirmation hearing, May 28, 1992. The parties stipulate that the value of the Halls' automobile as of the date of the confirmation hearing was Six Thousand Nine Hundred and No/100 ($6,900.00) Dollars.[1] No evidence was presented on the value of the Halls' automobile as of the date the Halls filed their Chapter 13 petition.

Concerning Chapter 13 case No. 91–60628, on December 28, 1989 GMAC loaned James Luther Johnson, Jr. and Amanda Hendrix Johnson Eight Thousand Seven Hundred Sixty–Six and 50/100 ($8,766.50) Dollars to purchase a 1989 Chevrolet CS10603 pickup truck, VIN # 1GCBSE6K2206266. On January 2, 1991 GMAC loaned James Luther Johnson, Jr. Eleven Thousand Eight Hundred and 96/100 ($11,800.96) Dollars to purchase a 1989 Chevrolet C–10 pickup truck, VIN # 1GCDC14K3KZ138575. GMAC retained a security interest in each vehicle. The Johnsons filed a joint Chapter 13 petition on November 11, 1991. In the Johnsons' Chapter 13 case, GMAC filed a proof of secured claim for Seven Thousand Five Hundred Forty–Four and 44/100 ($7,544.44) Dollars in connection with the loan for the 1989 Chevrolet CS10603 pickup truck and a proof of secured claim for Eleven Thousand Five Hundred Twenty–Two and 87/100 ($11,522.87) Dollars in connection with the loan for the 1989 Chevrolet C–10 pickup truck. The Johnsons' proposed Chapter 13 plan states that the 1989 Chevrolet CS10603 pickup truck will be surrendered (hereinafter "the surrendered vehicle") to GMAC in full satisfaction of the indebtedness incurred in connection with

---

**1.** In the Hall case, the parties do not raise the issue of the standard for valuation.

the purchase of that vehicle and by motion seeks to value the 1989 Chevrolet C–10 pickup truck, which the Johnsons propose to retain (hereinafter "the retained vehicle"), at Seven Thousand Six Hundred Twenty–Five and No/100 ($7,625.00) Dollars. Under the Johnsons' proposed plan secured creditors will be paid through disbursements from the Chapter 13 trustee the amount of their claims or value of the collateral, as set forth in the plan, whichever is less.

A consent order was entered in the Johnson case on January 28, 1992 granting GMAC relief from stay to dispose of the surrendered vehicle. The surrendered vehicle was sold at auction by GMAC on February 27, 1992 for Three Thousand One Hundred Seventy–Five and No/100 ($3,175.00) Dollars. GMAC seeks to recover a deficiency of Three Thousand One Hundred Twenty–One and 03/100 ($3,121.03) Dollars in connection with the sale of the surrendered vehicle.[2] The parties stipulate that according to the National Automobile Dealers Association ("NADA") Official Used Car Guide [3] the average retail value of the surrendered vehicle on the date of the confirmation hearing, March 24, 1992, was Five Thousand Two Hundred Twenty–Five and No/100 ($5,225.00) Dollars and the wholesale value on that date was Three Thousand Eight Hundred Seventy–Five and No/100 ($3,875.00) Dollars. The parties further stipulate that the NADA average retail value of the retained vehicle on the date the Johnsons filed their Chapter 13 petition was Nine Thousand Seven Hundred Fifty and No/100 ($9,750.00) Dollars and that the wholesale value on that date was Eight Thousand Fifty and No/100 ($8,050.00) Dollars, and further stipulate that the NADA average retail value of the retained vehicle on the date of the confirmation hearing, was Nine Thousand Six Hundred and No/100 ($9,600.00) Dollars and the wholesale value on that date was Seven Thousand Nine Hundred Twenty–Five and No/100 ($7,925.00) Dollars.

GMAC argues that the proper standard for valuation of its collateral is the property's retail value. GMAC also argues in both cases that its collateral should be valued as of the date of the Chapter 13 petition. The Johnsons contend that the value of the retained vehicle must be determined based on the wholesale value of the vehicle because the surrendered vehicle was sold for its wholesale value. The Johnsons further maintain that GMAC's collateral should be valued as of the date of confirmation.

## CONCLUSIONS OF LAW

Bankruptcy Code § 1325(a) sets forth criteria which must be met for confirmation of a Chapter 13 plan of reorganization. The plan proponent, the Chapter 13 debtor, bears the ultimate burden to prove that all of the confirmation criteria are met. *In re Packham*, 126 B.R. 603, 607–08 (Bankr.D.Utah 1991); *In re Warner*, 115 B.R. 233, 236 (Bankr.C.D.Cal.1989); *In re Girdaukas*, 92 B.R. 373, 376 (Bankr. E.D.Wis.1988); *contra In re Mendenhall*, 54 B.R. 44, 46 (Bankr.W.D.Ark.1985). A party objecting to confirmation initially must go forward with some evidence that the criteria for confirmation are not met. *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir.1987); *In re Packham, supra*, at 607.

Assuming all other Chapter 13 confirmation criteria are established, *see* 11 U.S.C. § 1325(a),

the court shall confirm a [Chapter 13] plan if . . .

---

2. The amount of the deficiency is not in dispute even though the total of the deficiency claim and the amount received by GMAC from the sale of the collateral is less than the original amount claimed.

3. NADA values are widely accepted among courts as an authoritative source for valuation purposes. *See, e.g., In re: Breckinridge*, 140

B.R. 642 (Bankr.W.D.Ky.1992); *In re: Achorn*, 124 B.R. 150 (Bankr.D.Me.1991); *Matter of Farrell*, 71 B.R. 627 (Bankr.S.D.Iowa 1987); *In re: Knipping*, 40 B.R. 865 (Bankr.W.D.La.1984); *In re: Siegler*, 5 B.R. 12 (Bankr.Minn.1980). In both of these Chapter 13 cases, the parties stipulate to the use of the NADA values.

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5).

If a secured creditor does not accept the proposed Chapter 13 plan and the debtor desires to retain and use the creditor's collateral, then, pursuant to § 1325(a)(5)(B), the plan must provide that the secured party retain its lien and receive property the present value of which is at least equal to the creditor's "allowed secured claim."

■ The determination of the creditor's "allowed secured claim" for purposes of § 1325(a)(5) is made by reference to 11 U.S.C. § 506(a), *see In re Hall*, 752 F.2d 582, 588–89 (11th Cir.1985), which determines the extent to which a secured creditor holds an allowed secured claim.[4] Section 506(a) provides in pertinent part as follows:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property,* and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(Emphasis added).

Neither § 506(a) nor § 1325(a)(5)(B) specifies a date as of which the valuation should be made.[5] Although the legislative history of § 506(a) indicates that the timing and method of valuation is not fixed and may be made on a case-by-case basis, H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), S.Rep. No. 989, 95th Cong., 2nd Sess. 68 (1978), § 506(a) is clear on its face that the value of a secured creditor's collateral "shall be determined in light of the purpose of the valuation...." The purpose of the valuations at issue is to determine whether these proposed Chapter 13 plans meet the confirmation criteria of 11 U.S.C. § 1325(a)(5)(B), that is, whether the plans provide for the distribution of property to the holders of secured claims, the present value of which is not less than the allowed secured claim. The directive in § 506(a) that valuation be made in light of its purpose contradicts GMAC's argument that the valuations should be made as of the respective dates of these bankruptcy fil-

---

4. The United States Supreme Court held in *Dewsnup v. Timm*, — U.S. —, —, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992), that the words "allowed secured claim" in 11 U.S.C. § 506(a) do not mean the same thing as those same words in 11 U.S.C. § 506(d). However, as the Court "express[ed] no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code," *id.,* — U.S. at — n. 3, 112 S.Ct. at 778 n. 3, I adhere to "the basic canon of statutory construction that identical terms within an Act bear the same meaning." *Estate of Cowart v. Nicklos Co.,* — U.S. —, —, 112 S.Ct. 2589, 2596, 120 L.Ed.2d 379 (1992). *See also Patterson v. Shumate,* — U.S. —, —, 112 S.Ct. 2242, 2251, 119 L.Ed.2d 519 (1992) (Scalia, J., concurring).

5. Although the language in § 1325(a)(5)(B)(ii) "value, as of the effective date of the plan" has been construed to indicate the date as of which value should be determined, *see, e.g., In re Moreau,* 135 B.R. 209, 212–13 (N.D.N.Y.1992), *In re Klein,* 10 B.R. 657, 660 (Bankr.E.D.N.Y.1981), *In re Fulcher,* 15 B.R. 446, 448 (Bankr.D.Kan.1981), legislative history is clear that this language, which is also used in §§ 1129(a)(9)(C), 1129(b)(2)(B)(i), 1325(a)(4), and 1328(b)(2) "indicates that the promised payment under the plan must be discounted to present value as of the effective date of the plan," H.R.Rep. No. 595, 95th Cong., 1st Sess. 408 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6364, not the date as of which the valuation should be made. *Accord United Sav. Ass'n. v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 377–78, 108 S.Ct. 626, 633–34, 98 L.Ed.2d 740 (1988).

ings. "If the amount of a secured creditor's allowed secured claim were to be conclusively determined by the value of the collateral on the date the bankruptcy petition was filed, and such amount could not be redetermined during the course of the bankruptcy case, the language in Section 506(a) would be rendered meaningless in the context of confirmation proceeding." *Matter of Seip*, 116 B.R. 709, 711 (Bankr. D.Neb.1990). Where the purpose of the valuation is to determine if the proposed plan meets the confirmation criteria of Chapter 13, according to § 506(a), valuation should be made in close proximity to the date of confirmation. *Accord In re Savannah Gardens–Oaktree*, 146 B.R. 306 at 308 (Bankr.S.D.Ga.1992); *Matter of Seip, supra,* at 711–12; 3 *Collier on Bankruptcy,* ¶ 506.04, 506–37 (L. King 15th ed. 1992); *contra In re Beard*, 108 B.R. 322, 323 (Bankr.N.D.Ala.1989); *In re Adams*, 2 B.R. 313, 314 (Bankr.M.D.Fla.1980).

■■■ GMAC contends valuing its collateral as of the date of confirmation results in an unconstitutional taking of private property in violation of the Fifth Amendment [6] because its collateral declined in value during the gap between the filing and confirmation dates of these Chapter 13 cases. Although the United States Constitution grants Congress the power to establish bankruptcy laws, Article I Section 8, cl. 4, that power is subject to the Fifth Amendment, which proscribes taking private property for public use without just compensation. Security interests are property rights within the protection of the Fifth Amendment, *Armstrong v. United States*, 364 U.S. 40, 48, 80 S.Ct. 1563, 1568, 4 L.Ed.2d 1554 (1960), and the bankruptcy system is a "public use" within the ambit

of the Fifth Amendment. *Matter of Bevill, Bresler & Schulman, Inc.*, 83 B.R. 880, 896 (D.N.J.1988).

Upon the filing of a bankruptcy petition, a secured creditor is precluded by the automatic stay of 11 U.S.C. § 362(a) from enforcing its State law rights in its collateral, the debtor's property, and receiving through foreclose and sale of collateral the value of its interest in that property as of the date of the bankruptcy petition. It may take several months for a case to reach the confirmation stage.[7] During the interim, the debtor may be permitted to use the creditor's collateral in an effort to reorganize, *see* 11 U.S.C. § 363, which use along with the passage of time may cause the property to decline in value from the amount the creditor would receive upon liquidation on the date of the bankruptcy petition but for the stay of § 362(a).

The concept of adequate protection in bankruptcy is derived from the Fifth Amendment's protection of property interests. *Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); H.R. No. 595, 95th Cong., 1st Sess. 338–40 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 49 (1978). "The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207, 103 S.Ct. 2309, 2315, 76 L.Ed.2d 515 (1983). See 11 U.S.C. §§ 361, 362(d)(1), 363(e). "The principle of adequate protection reconciles the competing interests of the debtor, who needs time to reorganize free from harassing creditors, and the secured creditor, on the other hand, who is entitled to constitutional protection for its bargained-for property interest." *In re Planned Systems, Inc.*, 78 B.R. 852, 861

---

6. The Fifth Amendment of the United States Constitution provides in pertinent part: "[P]rivate property [shall not] be taken for public use, without just compensation."

7. Upon the filing of a Chapter 13 petition, the Clerk of the Bankruptcy Court schedules a meeting of creditors pursuant to 11 U.S.C. § 341(a), which is held between 20 and 40 days after the date of the bankruptcy filing. Bankruptcy Rule

2003(a). Creditors have 90 days from the first date set for the meeting of creditors to file a proof of claim. Bankruptcy Rule 3002(c). The first confirmation hearing is held after the bar date for filing proofs of claim on the first available date on the court's calendar. This means that a confirmation hearing will be held not sooner than 4 months after the date the bankruptcy petition is filed.

(Bankr.S.D.Ohio.1987). The debtors in each case were required to commence making payments proposed by the plan within thirty (30) days after the plan was filed. 11 U.S.C. § 1326(a)(1). A debtor provides "adequate protection" to each creditor holding a secured claim by making preconfirmation payments to the Chapter 13 trustee. *See In re Coplin*, 1987 WL 61929 (Bankr.S.D.Ga.1987); 11 U.S.C. § 361(1). Upon confirmation of the debtors' plan, these accumulated funds are distributed pursuant to the plan. The distribution made upon confirmation is on the allowed secured claim. Through plan payments by the Chapter 13 debtor the holder of an allowed secured claim receives adequate protection of its property interests in the collateral during the pendency of the Chapter 13 case. *In re Dent*, 130 B.R. 623, 630 (Bankr.S.D.Ga.1991). However, this adequate protection is based upon the allowed secured claim.

■ If at confirmation the court determines a secured creditor's collateral is worth less at confirmation than its value on the date the bankruptcy petition was filed, that is, if after the fact the protection provided the secured party through plan payments proves to be inadequate, the creditor is entitled to a priority expense claim, a "superpriority" payable ahead of all other administrative expense claims, to the extent of the failure of adequate protection. 11 U.S.C. § 507(b).[8] *See Grundy Nat. Bank v. Rife*, 876 F.2d 361 (4th Cir. 1989); *In re: Callister*, 15 B.R. 521 (Bankr.D.Utah 1981); *In re Blackford Farms, Inc.*, 68 B.R. 639 (Bankr.N.D.Iowa 1986); *In re James B. Downing & Co.*, 94 B.R. 515 (Bankr.N.D.Ill.1988). "[W]hereas

adequate protection shields the creditor in the first instance from impairment in the value of his 'interest in property,' the superpriority was intended to recapture value unexpectedly lost during the course of a case...." *In re: Callister, supra*, at 528. By granting a superpriority expense claim to a secured creditor whose collateral declined in value during the delay between the date of the bankruptcy filing and the date of confirmation, § 507(b) compensates the creditor for the failure of adequate protection.[9] Thus there is no unconstitutional taking caused by the depreciation of the secured creditor's collateral. "Though the creditor might not receive his bargain in kind, the purpose of [adequate protection] is to insure that the secured creditor receives in value essentially what he bargained for." H.R.Rep. No. 595, 95th Cong., 1st Sess. 339 (1977), U.S.Code Cong. & Admin.News 1978, p. 6295. The claim of a secured creditor awarded a superpriority expense claim pursuant to § 507(b) for the decline in the value of its collateral will be split three ways: a secured claim equal to the value of the collateral; a § 507(b) priority claim to the extent of the difference between the value of the property on the date of the bankruptcy petition and the date of confirmation; and a general unsecured claim for the balance of the debt.

■ Where adequate protection is at issue the ultimate burden of proof lies with the debtor. 11 U.S.C. §§ 362(g)(2), 363(o)(1). Initially, however, the creditor must go forward with some evidence that its interest is not adequately protected. *See In re Raymond*, 99 B.R. 819, 820–21 (Bankr.S.D.Ohio 1989). A secured creditor who seeks compensation pursuant to

---

**8.** 11 U.S.C. § 507(b) provides:

 If the trustee, under section 362, 363, or 364 of this title [11], provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section [507] arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priori-

ty over every other claim allowable under such subsection.

**9.** Section 361(3) precludes granting administrative expense priority treatment as a means of providing adequate protection. Where, however, after the fact the adequate protection provided, payments made pursuant to a Chapter 13 plan of reorganization, proves to be inadequate, the secured creditor is being compensated for the failure of adequate protection pursuant to § 507(b), rather than receiving adequate protection. *See In re Callister, supra*, at 528.

§ 507(b) for an alleged failure of plan payments to adequately protect its property interest during the preconfirmation pendency of the Chapter 13 case must present some evidence that the value of the property securing its claim declined since the date of the bankruptcy filing. *See In re Airlift Intern., Inc.*, 26 B.R. 61 (Bankr.S.D.Fla. 1982) (creditor not entitled to § 507(b) claim where it failed to present any evidence of the failure of adequate protection). Upon such a showing, the burden shifts to the debtor to establish the creditor was adequately protected.

 The timing of the valuation having been resolved, remaining for resolution is the standard to be used in determining value. GMAC argues that because the debtors in these two Chapter 13 cases intend to retain and use its collateral as part of their reorganization efforts the appropriate standard of value is retail value. The debtors contend GMAC's collateral should be valued based on the wholesale value of the property. The Johnsons argue in reliance on the language in § 506(a) that a secured creditor is secured "to the extent of the value of such creditor's interest in the estate's interest in such [collateral] property." Valuation therefore should be based on the wholesale value of the subject property because the secured creditor's interest is what it would receive if it foreclosed its interest in the collateral, which typically is the wholesale price brought by foreclosure sale.

Section 506(a) does not specify a standard for valuation of a secured creditor's collateral. The language in § 506(a) "[s]uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property" and its legislative history establish that no single standard was intended to apply to all situations. "Value does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a

full going concern value." H.R. No. 95–595, 95th Cong., 1st Sess. 356 (1977). However, "[w]hile courts will have to determine value on a case-by-case basis, [section 506(a)] makes it clear that valuation is to be determined in light of the ... proposed ... disposition or use of the subject property." S.Rep. No. 989, 95th Cong., 2nd Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5854. In the Johnson case the debtors propose to retain and use the C–10 pick-up truck and surrender the CS10603 pick-up truck to GMAC. In the Hall case, the debtor proposed to retain and use the Chevrolet automobile. The proposed disposition or use of each vehicle in each plan governs the standard to be used by the court in establishing value. 11 U.S.C. § 506(a). The retained vehicles are not being liquidated and sold. They are being used in the debtors' reorganization process. A wholesale value is therefore inappropriate.[10] *In re Reynolds*, 17 B.R. 489 (Bankr. N.D.Ga.1981); *contra In re Owens*, 120 B.R. 487, 490 (Bankr.E.D.Ark.1990). I agree that "[t]he continued use of the vehicle by the debtor during the period of the proposed plan demands a rehabilitation value consistent with the 'going concern' of the Chapter 13 debtor.... Thus, the retail replacement cost standard is the appropriate measure of value under § 506(a)." *In re Reynolds, supra*, at 493 (footnote omitted).

The language in § 506(a) relied on by the Johnsons (that a secured creditor is secured "to the extent of the value of such creditor's interest in the estate's interest in such [collateral] property") only "separates an undersecured creditor's claim into two parts: he has a secured claim to the extent of the value of his collateral; he has an unsecured claim for the balance of his claim." H.R.Rep. No. 95–595, 95th Cong., 1st. Sess. 356 (1977). It does not establish the criteria to be used by the court in measuring value. Although § 506(a) does

10. I use the terms "wholesale" and "retail" because in the context of these cases the evidence presented on value uses these terms. "Wholesale," "foreclosure," "liquidation," or "quick sale" values describe a proposed disposition of property by surrender to the creditor and prompt conversion of the property by the creditor to cash, usually in accordance with State foreclosure law. "Retail," "going concern," "replacement cost," or "rehabilitation" values describe a proposed retention and use of property in the debtor's ongoing financial reorganization.

require that disposal of the collateral be taken into account for valuation purposes, these debtors seek to retain and use their vehicles as part of a Chapter 13 reorganization and therefore the Johnsons' analysis, which assumes a disposition of the collateral by the secured party, is incorrect. Applying a wholesale standard of valuation to the collateral under these circumstances would be inconsistent with the language of § 506(a).

The Johnsons' argument that the vehicle retained must be valued on a wholesale basis because the vehicle surrendered was sold for its wholesale value is unfounded. Pertaining to the surrendered vehicle, the plan proposed surrender of the collateral to the creditor as the disposition or use of the property. Under the plan the Johnsons proposed a different disposition or use of their two vehicles; therefore, under § 506(a) a different standard must be applied in determining value for § 506(a) and § 1325(a)(5) purposes. The sale of the surrendered vehicle determined that vehicle's value and does not bear on the proper measure of value of the vehicle the Johnsons opted to retain and use in their reorganization under Chapter 13. The Johnsons do not dispute the deficiency unsecured claim sought to be filed by GMAC in the amount of Three Thousand One Hundred Twenty–One and 03/100 ($3,121.03) Dollars. GMAC obtained the liquidation or wholesale value of the surrendered collateral by disposing of the collateral in compliance with the financing agreement between the parties and applicable State law. GMAC is entitled to an unsecured claim for the deficiency on the sale of the surrendered vehicle.

██ Just as valuation for confirmation purposes under § 1325(a)(5) requires consideration of the proposed disposition or use of property under the plan, so to must disposition or use be considered in determining whether there has been a failure of adequate protection mandating an administrative expense superpriority claim under § 507(b).

It is common ground that the 'interest in property' referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay. Thus, it is agreed that if [the collateral] had been declining in value petitioner would have been entitled, under § 362(d)(1), to cash payments or additional security in the amount of the decline, as § 361 describes....

*Timbers of Inwood Forest Associates, Ltd., supra,* 484 U.S. at 370, 108 S.Ct. at 630.

In these cases the creditor claims that its collateral has declined in value between the date of filing and the confirmation hearings. If value under § 506(a) for § 1325(a)(5) purposes is determined as of confirmation then the preconfirmation payments by the debtor for distribution post confirmation in accordance with the plan would not compensate the creditor for this loss of value mandating a § 507(b) superpriority claim. However, *Timbers* does not provide guidance as to the standard to be applied for the determination of value at the two definitive dates, the date of filing of the bankruptcy petition and the date of confirmation. As previously noted, for confirmation purposes, where the debtor proposes to retain and use the creditor's collateral under the plan of reorganization, the standard for determining value is the retail value. But for the stay of § 362(a), on the date the petition was filed the creditor could have recovered its collateral and foreclosed its security interest. This describes a wholesale value as of the date of the petition filing. *In re George Ruggiere Chrysler–Plymouth,* 727 F.2d 1017 (11th Cir.1984). (For the purpose of determining whether a creditor secured by an interest in cash collateral, which the debtor was permitted by the bankruptcy court to use pursuant to § 363(c)(2)(B), is adequately protected as required by § 363(e), the value of the collateral is determined on a wholesale basis and made as of the date of the bankruptcy filing. *Id.* at 1020, and at n. 4.) Requiring under § 1326(a)(1) that the debtor commence making payments within thir-

ty (30) days of filing the proposed plan and requiring that a plan proposing the retention and use of property allow a secured claim to the extent of the retail value of the collateral provides the adequate protection contemplated under § 361. Therefore, under circumstances where the debtor proposes to retain and use the collateral and there is a decline between the wholesale value of collateral as of the date of filing of the petition and the retail value as of the date of the confirmation hearing, the creditor will be entitled to a § 507(b) superpriority claim.

In the Hall case, the parties stipulated at the confirmation hearing that the value of the Halls' vehicle as of the date of the hearing was Six Thousand Nine Hundred and No/100 ($6,900.00) Dollars. No evidence was presented, neither was it stipulated, as to the value of the vehicle on the date of the Halls' bankruptcy petition. GMAC failed to produce any evidence that its property interest in the collateral has not been adequately protected. GMAC filed two unobjected to proofs of claim, which together establish the balance of its claim at Nine Thousand Five Hundred Forty–Nine and 34/100 ($9,549.34) Dollars. 11 U.S.C. § 502(a). GMAC's secured claim is Six Thousand Nine Hundred and No/100 ($6,900) Dollars, the value of its collateral. 11 U.S.C. § 506(a). The balance of GMAC's claim, Two Thousand Six Hundred Forty–Nine and 34/100 ($2,649.34) Dollars, is a general unsecured claim. As the Halls' motion proposes to undervalue GMAC's collateral, the plan based upon this undervaluation must be denied confirmation.

In the Johnsons' case, the parties stipulate that the NADA average retail value of the vehicle retained by the debtors was Nine Thousand Six Hundred and No/100 ($9,600.00) Dollars on the date of the confirmation hearing, and that the average wholesale value of the vehicle on the date of the Johnsons' Chapter 13 petition was Eight Thousand Fifty and No/100 ($8,050.00) Dollars. GMAC's unobjected to proof of claim is for Eleven Thousand Five Hundred Twenty–Two and 87/100 ($11,522.87) Dollars. 11 U.S.C. § 502(a). GMAC's allowed secured claim is Nine Thousand Six Hundred and No/100 ($9,600.00) Dollars, the value of its collateral. 11 U.S.C. § 506(a). Based upon the stipulated values, the retail value at confirmation exceeds the wholesale value at filing. Therefore, the preconfirmation payments to the trustee and the established retail value for confirmation purposes adequately protects GMAC's interest. No superpriority claim is allowable. From the unobjected to claim and the stipulated retail value of the retained vehicle, GMAC is allowed an unsecured claim of One Thousand Nine Hundred Twenty–Two and 87/100 ($1,922.87) Dollars. As the Johnsons' proposed plan undervalues GMAC's collateral confirmation must be denied.

It is therefore ORDERED that GMAC's objection to confirmation in Chapter 13 case No. 91–60682 is sustained. Within fifteen (15) days from the date of this order the debtors, James Larry Hall, Jr. and Deborah F. Hall, shall amend their plan to comply with this order.

It is further ORDERED that GMAC's objection to confirmation in Chapter 13 case No. 91–60628 is sustained. Within fifteen (15) days from the date of this order the debtors, James Luther Johnson, Jr. and Amanda Hendrix Johnson, shall amend their plan to comply with this order.