In re Elmer J. SCHREIBER and Linda Schreiber a/k/a Linda Spies, Debtors.

Linda SCHREIBER a/k/a Linda Spies, Plaintiff,

v.

The UNITED STATES of America, DE-PARTMENT OF the TREASURY IN-TERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 91 B 16970.
Adv. No. 93 A 00918.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 21, 1994.

Arthur G. Jaros, Jr., Richter & Jaros, Oak Brook, IL, for plaintiff.

David E. Cohen, Skokie, IL, Chapter 7 Trustee.

Samuel D. Brooks, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC.

Mayer Silber, Dist. Counsel, I.R.S., Chicago, IL.

### MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This adversary proceeding relates to the bankruptcy petition of Elmer and Linda

Schreiber ("Schreibers" or "Debtors") filed under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. Their Plan was confirmed. Pursuant thereto, their house was later sold. The net proceeds of that sale are here in dispute. The United States asserts a tax lien against those proceeds

Ms. Schreiber filed this action partly to determine the extent of the government's lien on Debtors' home. Mr. Schreiber is not a party to this adversary proceeding. Ms. Schreiber contends that, for purposes of the Internal Revenue Service's ("IRS") lien under 26 U.S.C. § 6321, the amount of its allowed secured claim should be determined as of the petition date. She thereby seeks to take advantage of certain work by her attorney during the bankruptcy which resulted in a negotiated reduction of the second mortgage on the house. The home has since been sold and net proceeds resulted. The IRS claims that its lien applies to those proceeds. Pre-bankruptcy, the IRS held a tax lien on Debtors' property of $41,486.92. Ms. Schreiber says that the IRS had no equity to attach to when the bankruptcy was filed, and therefore cannot claim such equity now.

Ms. Schreiber further maintains that Mr. Schreiber's Qualified Individual Retirement Annuity ("IRA") should be excluded from the property subject to the IRS lien when determining extent of that lien. Plaintiff maintains that the IRA is exempt from the IRS lien pursuant to Treasury Regulation 401(a)–13(b)(2), and therefore should be excluded from Debtors' property subject to the lien. Finally, she contends that the government lien on other property, to the extent it applies to her, only applies to the value of "her"

portion of those properties because the Schreibers are now divorced.

The IRS argues that the government is an oversecured creditor, as defined by § 506(b), and thereby is entitled to post-petition interest. In addition, the government maintains that there is no legal basis for valuing the Schreiber's residence as of the petition date or for excluding the IRA from the reach of its lien.

The parties herein filed cross-motions for summary judgment. Both parties have made their respective filings required under Local District Rule 12(m) and (n).

For reasons discussed below, the government's allowed secured claim is valued as of the date of sale and at the actual sale price of the home, and Mr. Schreiber's IRA is found to be included in Debtors' property subject to the IRS lien. After those rulings, Debtors' home equity exceeds the amount of the IRS allowed secured claim, and so the IRS lien and claim accrued interest post-petition.

Ms. Schreiber's contentions as to the extent of the government's lien on other property are not supported by authority and are overruled.

Accordingly, by separate order the IRS motion for summary judgment is allowed and that of Ms. Schreiber is denied. Judgment will enter accordingly.

### UNDISPUTED FACTS

From the respective filings these facts emerge as undisputed:

When the bankruptcy was filed, in addition to their home and Mr. Schreiber's IRA, Debtors had personal property subject to the IRS lien, and that other property is valued at $23,850.00.[1] In addition, Mr. Schreiber owned an IRA valued at $15,856.87.

1. The following property, excluding the Debtors' residence and Mr. Schreiber's IRA, is listed in the Debtors' schedules:

| Property | Value Per Debtors' Schedules |
|---|---|
| Checking Account | $ 350.00 |
| Misc. Household Goods and Furniture | 5,000.00 |
| Jewelry, Sporting Goods, and Clothing | 12,000.00 |
| Contingent and Unliquidated Claim * | 800.00 |
| 1985 Cadillac | 5,700.00 |
| Total | $23,850.00 |

United States' Statement of Uncontested Facts at p. 6; Linda Schreiber's Local Rule 12(m) Statement of Material Facts at p. 2.

* The Debtors' schedules of claims lists this $800.00 claim as belonging to Mrs. Schreiber for a claim against Hello World Travel.

The Schreibers filed their petition for relief under Chapter 11 of the Bankruptcy Code on August 9, 1991. Their marriage has since been dissolved. Debtors scheduled an IRS secured claim of $40,000.00 pursuant to 26 U.S.C. § 6321, for income taxes, penalties, and interest for the tax periods ending December 1986 and 1987. In addition, an IRS unsecured priority claim for $84,000.00 was scheduled due to an asserted 100% tax liability of Mr. Schreiber as responsible officer of his corporate business under 26 U.S.C. § 6672. The latter claim arose because of withholding taxes owed by Princeton Products, Inc., for tax periods through August of 1991.

The IRS filed proofs of claims on October 11, 1991; December 16, 1991; and July 2, 1993. The amounts sought included $41,486.92 related to the secured claim under § 6321, and $35,016.35 for all IRS unsecured claims under § 6672 for tax periods ending September of 1991. On September 18, 1990, the IRS had recorded a revenue lien against the Debtors in the Cook County, Illinois, Recorder of Deed's office for $33,772.28. Its $41,486.92 secured claim includes pre-petition interest and penalties on top of the recorded revenue lien.

When the bankruptcy petition was filed, the IRS lien against Debtors' residence was subordinate both to a first mortgage having a balance between $65,000.00 and $70,000.00 and a second mortgage of $195,000.00. Thus, on the filing date, the home was encumbered with a total of $265,000.00 in liens superior to that of the IRS. Since the home was appraised at $230,000.00 and ultimately sold for $231,000.00, a sum far less than this total of pre-bankruptcy liens, Plaintiff argues that the Debtors had no equity when the proceeding was filed. Subsequent to the bankruptcy filing, however, through settlement the second mortgage was allowed in the sharply reduced amount of $97,338.12, thereby lowering the total of the two superior liens to $167,661.88, at the time of sale, much less than the sale price.

On May 28, 1992, (nine and one-half months after the bankruptcy filing), Debtors' First Amended Plan of Reorganization as modified ("Plan") was confirmed herein. That Plan provided for sale of the Debtors' residence and for distribution following sale of all proceeds according to priorities of liens under non-bankruptcy law. On April 30, 1993, (eleven months after Plan confirmation) the Debtors' residence was sold for a gross selling price of $231,100.00. After disbursing proceeds in full payment to holders of the two mortgages and paying closing costs, $45,022.59 remained. The parties here each seek some or all of those proceeds.

The actual sale price of $231,100.00 may be compared to the estimated home value of $275,000.00 scheduled by Debtors when they filed in bankruptcy,[2] the appraised value of that property at $230,000.00, and the Debtors' asking price of $268,500.00. Disclosure Statement at p. 10. Thus, the ultimate sale price was very close to the appraised value reported in the Disclosure Statement, but well below the Debtors' hopes for the sale.

Through litigation and negotiation, the total of mortgage liens on the property was reduced and the house sale produced a surplus. Who gets the benefit, Debtors or the government?

### JURISDICTION

These matters are before the Court pursuant to 28 U.S.C. § 157, and are referred here under Local District Rule 2.33. This Court

---

2. The summary judgment papers filed by both sides demonstrate only one value for the home—the actual price at which it was sold. Debtors' scheduled estimate of higher value at the time the bankruptcy was filed is merely an opinion unsupported by any affidavit demonstrating knowledge of the home market and comparable sales in the area of their home. Thus, there is nothing in the record (nothing at least that should be considered under Fed.R.Civ.P. 56 (Fed.R.Bankr.P. 7056)) that establishes any value of the home as of any of the dates in issue, other than the actual sale price. Debtors' scheduled value upon filing stands in this record as a mere estimate or a representation of value to the creditors, not as evidence or establishment of value under summary judgment requirements.

has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

### SUMMARY JUDGMENT STANDARDS

In order for a party to prevail on a motion for summary judgment, the movant must meet the criteria set forth in Fed.R.Civ.P. 56 (Fed.R.Bankr.P. 7056). A summary judgment avoids unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990).

■ The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ On a summary judgment motion, inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355; *Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1302 (7th Cir.1991). However, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987).

■ When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment should be granted. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

### Cross Motions for Summary Judgment

■ When each side seeks summary judgment, that does not by itself indicate that there are no genuine issues of material fact.

The Court must rule on each motion separately in determining whether or not each judgment should be entered, in accordance with applicable principles. *ITT Indus. Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill.1987) (Shadur, J.); *In re Woodstock Assoc. I, Inc.,* 120 B.R. 436, 442 (Bankr.N.D.Ill.1990). *See* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720 (2d ed. 1983 & Supp.1987). The Court can deny both motions if both parties fail to meet their burden. *ITT,* 674 F.Supp. at 1331; *Wolf v. Maryland Casualty,* 617 F.Supp. 456, 458 (S.D.Ill.1985). *See* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720 (2d ed. 1983 & Supp.1987).

However, that is not the result indicated here. For reasons discussed below, Plaintiff's motion for summary judgement will be denied and that of the United States will be allowed.

### DISCUSSION

**A. Valuation of the IRS Allowed Secured Claim**

■ The moment at which an allowed secured claim should be valued is not expressly stated in the Bankruptcy Code. *In re Melgar Enterprises, Inc.,* 151 B.R. 34, 39 (Bankr. E.D.N.Y.1993); *In re Johnson,* 145 B.R. 108, 112 (Bankr.S.D.Ga.1992). Section 506(a) of the Code provides in relevant part that:

> *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property,* and in conjunction with any hearing on such disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting the creditor's interest.

(Emphasis added) 11 U.S.C. § 506(a) (1993). In accordance with the underscored statutory language, courts determine the value of allowed secured claims on a case-by-case basis in light of the purpose for valuation and proposed disposition of the subject property. *In re Landing Associates, Ltd.,* 122 B.R. 288, 293 (Bankr.W.D.Tex.1990) (*quoting* S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978) *re-*

*printed in* 1978 U.S.Code Cong. & Admin.News 5787, 5854); *In re Melgar Enterprises, Inc.*, 151 B.R. at 39; *In re Johnson*, 145 B.R. at 112. A ruling that the value of collateral is conclusively fixed on the date a bankruptcy petition is filed would disregard the underscored language of 11 U.S.C. § 506(a) quoted above. *In re Seip*, 116 B.R. 709, 711 (Bankr.D.Neb.1990).

■ For purposes of passing on plan confirmation issues, secured claims are valued at the time of Plan confirmation. *Dewsnup v. Timm*, —— U.S. ——, ——, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992); *Ahlers v. Norwest Bank Worthington (In re Ahlers)*, 794 F.2d 388, 399 (8th Cir.1986) ("[f]or purposes of a reorganization plan, the value of the collateral is to be determined at the time for confirmation of that plan"), *rev'd in part*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (reversed solely on an unrelated issue regarding the absolute priority rule); *In re Melgar Enterprises, Inc.*, 151 B.R. at 39; *In re Seip*, 116 B.R. 709, 711 (Bankr.D.Neb. 1990).

■ As valuation is ascertained dependent on the purpose for evaluation and case circumstances, value of the property securing a claim, and thus the allowed amount of the secured claim, may change during the course of a bankruptcy case. 3 King, *Collier on Bankruptcy*, ¶ 506.04, pp. 506–26 (15th ed. 1993) *citing Bray v. Shenandoah Federal Savings and Loan Ass'n. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088–9 (4th Cir.1986). In event the property is actually sold, regardless of the purpose for valuation, valuation of the collateral should normally be based on the sale price, provided that such consideration is fair and was arrived at by parties at arm's length. 3 King, *Collier on Bankruptcy* ¶ 506.04 at 506–27.

■ Ms. Schreiber maintains that all secured claims must be valued as of the bankruptcy petition filing date at a time when the liens exceeded property value. She cites several cases that assertedly support her position.[3] However, those cases are all distinguishable in that they either involved property that was merely valued but not sold, or involved claims based on judgment liens rather than tax liens.

Here, in contrast, we have a property that was actually sold, and the sale was pursuant to a Plan providing for distribution at that time based on priorities under non-bankruptcy law.

Moreover, here a tax lien is involved, not a judgment lien. Tax liens are distinct from judgment liens and are accorded preferred treatment. Taxing authorities are granted such treatment because they are involuntary creditors; they can neither choose their debtors nor take security in advance of the time the taxes become due. *In re New England Carpet Co., Inc.*, 26 B.R. 934, 941 (Bankr.D.Vt.1983).

Plaintiff also relies on *In re Riley*, 88 B.R. 906 (Bankr.W.D.Wis.1987). *Riley* is factually similar to the case at hand, as the Riley residence was sold after Plan confirmation. *Id.* at 909. The court there held that tax liens may be avoided under § 506(d) to the extent they are under-collateralized when the bankruptcy petition was filed. *Id.* at 912. However, the court used the proceeds from the sale of the debtor's residence, sold two years after confirmation, to determine the amount of the allowed secured claims of the taxing authorities. *Id.* at 909, 915. That suggested that there was no difference in value at the different dates. Consequently, there was no need to reach the timing issue and the weight of *Riley's* reasoning is doubtful. Moreover, that case focused on the issue of when to value the property because that value determined whether the lien in issue had value. It did not involve the unusual circumstance present here where one of the mortgage liens was reduced by agreement after the petition filing, thus resulting in equity after the two mortgages were paid.

---

3. These citations include: *In re Brager*, 39 B.R. 441 (Bankr.E.D.Pa.1984); *In re Wells*, 52 B.R. 368 (Bankr.E.D.Pa.1985); *In re Richardson*, 82 B.R. 872 (Bankr.S.D.Ohio 1987); *In re Flagler- At–First Associates, Ltd.*, 101 B.R. 372 (Bankr. S.D.Fla.1989); and *In re Beard*, 108 B.R. 322 (Bankr.N.D.Ala.1989).

Finally, terms of the confirmed Plan there were not analogous.

*In re Cuisinarts*, 115 B.R. 744 (Bankr. D.Conn.1990), was also cited by Plaintiff. There, the bankruptcy court rejected the argument that allowed secured claims should be valued as of the petition filing date. Instead, the court used the actual sales price of the debtor's assets to determine the extent of the relevant allowed secured claims. *Id.* at 748.

Plaintiff's attempt to establish the amount of the IRS allowed secured claim as of the petition filing date is contrary to the holding of *Dewsnup v. Timm*, —— U.S. at ——, 112 S.Ct. at 778, as applied to Chapter 11 proceedings by *In re Bloomingdale Partners*, 160 B.R. 93, 97 (Bankr.N.D.Ill.1993). In *Dewsnup*, the Supreme Court refused to limit the amount of the allowed secured claim to the collateral value on the bankruptcy filing date, under § 506(a), holding that "[a]ny increase over the judicially determined valuation during the bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor." *Dewsnup*, —— U.S. at ——, 112 S.Ct. at 778.

In *Bloomingdale*, the Bankruptcy Judge reasoned that the *Dewsnup* analysis applied as well to Chapter 11 proceedings. The opinion suggests that, since *Dewsnup* requires that increases in the value of collateral accrue to the secured creditor, then the "best interests" test of 11 U.S.C. § 1129(a)(7)(A)(ii)[4] must be interpreted to entitle a creditor at least to the present value of its secured claim at time of confirmation, as increased during the pendency of the case. *In re Bloomingdale*, 160 B.R. at 97. *Bloomingdale* found no reason why increases in value should accrue to creditors in Chapter 7 cases but not in Chapter 11 cases. *Id.*

Ms. Schreiber points out that the secured residential property was sold long after title had revested in Debtors by Plan confirmation. The Chapter 11 Plan was confirmed in May 1992 and the residence sold in April 1993. Therefore, Plaintiff contends that the sale date of the property is irrelevant, as that sale occurred after the residence was no longer property of the estate. It follows, she argues, that the only question to be determined is whether Debtors had equity in the property as of the petition date.

■ However, this argument does not give proper weight either to the reasoning in *Dewsnup* and *Bloomingdale* or to Article 8 of the confirmed Plan. Article 8 provided that, "in the event of the sale of the residence, the net proceeds shall be distributed in accordance with the priorities under local law to the allowed secured claims with any balance retained by the Debtors." The confirmed Plan thus looked prospectively to distribution of sale proceeds post-confirmation. A confirmed plan is a contract, and the parties to a plan are bound by its terms. *In re Cook*, 126 B.R. 575, 583 (Bankr.D.S.D.1991). As a result, Ms. Schreiber is bound by the terms of the Plan as confirmed. Pursuant thereto, sale proceeds were subject to the IRS lien as of the date of sale, for that is what Plan Article 8 requires.

After the residence was sold, the Schreibers had equity available to satisfy the IRS lien. The Schreibers' Plan looked forward to the possibility of that happening after sale. Therefore, after distributing sale proceeds to the senior claims, the remaining proceeds, to the extent necessary, must be applied to satisfy the IRS allowed secured claim.

## B. *The Qualified Individual Retirement Annuity*

■ Plaintiff also argues that the IRS lien should not attach to Mr. Schreiber's rights in his pension plan because of the "spendthrift trust" clause in that plan. A "spendthrift trust" or "anti-alienation" clause prevents ordinary creditors from attaching pension payments. Such clauses are statutorily required for a plan to "qualify" under

4. Each holder of a claim or interest … will receive or retain under the plan on account of such claim or interest property of a value, *as of the effective date of the plan,* that is not less then the amount. . . .

(emphasis added) 11 U.S.C. § 1129(a)(7)(A)(ii) (1993).

ERISA.[5] In order for a corporation to obtain the federal tax benefits of providing a pension plan, the plan must "qualify" under ERISA. Ms. Schreiber relies on *In re Taylor*, 91–2 USTC ¶ 50, 534, 1991 WL 185110 (Bankr.D.Md.1991) and her reading of Treas. Reg. § 1.401(a)–13(b)(2) to support her argument.

Treasury Regulation § 1.401(a)–13(b)(2) provides that anti-alienation clauses are not effective to block tax judgments or tax levies.[6] If it applies, Plaintiff's point is clearly lost. The *Taylor* court, however, distinguished between tax judgments and levies and tax *liens*. That court interpreted this Treasury Regulation as providing that anti-alienation clauses, despite not being effective to preclude tax judgments and levies, are nonetheless effective against tax liens because tax liens were not expressly listed in the regulation. *In re Taylor*, 91–2 USTC at ¶ 50, 534.

 This court declines to follow *Taylor*. One who fails to pay a tax assessment or levy after notice and demand is subject to a lien, in the amount of the unpaid tax, which attaches "to all property and rights to property, whether real or personal belonging to" the delinquent taxpayer. 26 U.S.C. § 6321. The Internal Revenue Code, in 26 U.S.C. § 6334, provides a list of property exempt from levy. However, even assets exempt from levy under § 6334 are secured by a federal tax lien. *United States v. Barbier*, 896 F.2d 377, 378 (9th Cir.1990). Tax liens remain enforceable *in rem* against the property after discharge of personal liability in bankruptcy. *In re Isom*, 901 F.2d 744 (9th Cir.1990).

 In interpreting § 6321, the Supreme Court found that Congress, when creating this lien, selected strong and clear words to reveal a purpose to assure collection of taxes. *Glass City Bank v. United States*, 326 U.S. 265, 267–68, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945). The language in this statute "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce*, 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). As Mr. Schreiber's beneficial interest in his IRA is property or rights to property, it is subject to a tax lien. Mere anti-alienation or spendthrift trust language cannot override § 6321 and prevent a lien from attaching. *In re Raihl*, 152 B.R. 615, 618 (9th Cir. BAP 1993), *citing Leuschner v. First Western Bank and Trust Co.*, 261 F.2d 705 (9th Cir.1958).

Finally, § 514(d) of ERISA provides that "nothing in this title shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States ... or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d) (1993); *In re Jacobs*, 147 B.R. 106, 107–8 (Bankr.W.D.Pa. 1992).

Accordingly, most courts addressing this issue have ruled that an IRS lien attaches to taxpayer's interest in an IRA. *In re Palmore*, No. 92–C–899–C, 1993 WL 246301 (N.D.Okla.1993); *In re Raihl*, 152 B.R. at 619; *In re Cook*, 150 B.R. 439 (E.D.Ark. 1993); *In re Jacobs*, 147 B.R. at 108.

### C. *Post-petition Interest*

 Section 506(b) provides in relevant part: "To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim." This provision plainly entitles the holder of an oversecured claim to post-petition interest. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The right to such post-petition interest is unqualified. *Id.; Rake v. Wade*, —— U.S. ——, ——, 113 S.Ct. 2187, 2193, 124 L.Ed.2d 424 (1993).

---

**5.** Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461.

**6.** Treas.Reg. § 1.401(a)–13(b)(2) (as amended in 1990) provides as follows:

(2) Federal tax levies and judgments. A plan provision satisfying the requirements of sub-section (1) of this paragraph shall not preclude the following:

(i) The enforcement of Federal tax levy made pursuant to Section 6331.

(ii) The Collection by the United States in a judgment resulting from an unpaid tax assessment.

■ The total amount of post-petition interest to be added to principal due is limited by the collateral value. *United States Ass'n v. Timbers of Inwood Forest,* 484 U.S. 365, 372, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988). Post-petition interest pursuant to § 506(b) is measured from the date of petition filing until payment of the secured claim, or until the effective date of the plan. *Rake v. Wade,* —— U.S. at ——, 113 S.Ct. at 2190; 3 King, *Collier on Bankruptcy,* ¶ 506.05, pp. 506–44 (15th Ed.1993).

■ Accordingly, in this case, after valuing the IRS allowed secured claim as of the date the Schreiber residence sold and including net sale proceeds therefrom, then also including Mr. Schreiber's qualified IRA and other available assets, the total property available to the IRS totals $84,729.46.[7] This is more than enough to satisfy the pre-petition IRS lien in the amount of $41,486.92. Therefore, the IRS is oversecured and entitled to all post-petition interest under § 506(b) from the date the petition was filed until the secured claim is fully paid.

#### D. *Ownership of Marital Property*

■ In Plaintiff Linda Schreiber's Motion for Summary Judgment, she argues that, because Debtors are now divorced (subsequent to filing of the bankruptcy), the lien as applied to herself is limited to the value of her individual portion of those properties. For purposes of this argument, she seems to ask that the IRS lien be valued at the time of the divorce rather than at the time of the bankruptcy filing.

Ms. Schreiber contends that her individual portion of the properties described in note 1 above is equal to $6,800.00. Of this amount, $6,000.00 represents her contended interest in those joint properties. The remaining $800.00 represents a claim owned solely by Ms. Schreiber. Consequently, Ms. Schreiber requests that this Court determine under 11 U.S.C. § 506(a) that the IRS lien as applied to her is limited to this $6,800.00. She did not demonstrate by affidavit that the $6,000.00 value was all of the joint properties in which she retained an interest.

■ Other than referring generally to the legislative history of 11 U.S.C. § 302, she does not provide any case authority or other specific support for this position. Nor did the government respond to this point. Her legally unsupported request to limit the IRS lien to the value of property later apportioned to her (evidently through the divorce) is denied. A lien applies to whatever property it attaches to, no matter who holds that property. Absent authority to the contrary, it appears evident that the government may not be deprived of a part of its lien through or because of divorce proceedings.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment will be denied. The IRS motion for summary judgment will be allowed, and Ms. Schreiber's complaint will be dismissed. The government will be asked to submit a proposed judgment in accord with this ruling.

---

**7.** The Debtors' equity subject to the IRS lien of $44,772.28 consists of the following:

$23,850.00 Property of Debtors concededly subject to the IRS lien. (See, supra n. 1.)
$45,022.59 Net Proceeds from sale of Debtors' residence.
$15,856.87 Mr. Schreiber's IRA
$84,729.46 Total available equity.