In re James Luther JOHNSON, Jr. and Amanda Hendrix Johnson, Debtors.

James Luther JOHNSON, Jr. and Amanda Hendrix Johnson, Appellants,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, Appellee and Cross-Appellant.

In re James Larry HALL, Jr. and Deborah F. Hall, Debtors.

GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,

v.

James Larry HALL, Jr. and Deborah F. Hall, Appellees.

Bankruptcy Nos. 91–60628, 91–60682. Civ. A. Nos. CV692–132, CV692–124.

United States District Court, S.D. Georgia, Statesboro Division.

March 7, 1994.

Joseph Michael Hall, Ratchford, Hall & Godlove, Statesboro, GA, for James Luther Johnson, Jr. and Amanda Hendrix Johnson.

Ralph Kenny Stone, Edenfield, Stone & Cox, Statesboro, GA, for General Motors Acceptance Corp.

Barnee C. Baxter, Augusta, GA, Chapter 13 Trustee.

Jack K. Berry, Savannah, GA, U.S. Trustee.

John Robert Thompson, Swainsboro, GA, for James Larry Hall, Jr. and Deborah F. Hall.

## ORDER ON APPEAL

EDENFIELD, Chief Judge, and BOWEN, District Judge.

This Order consolidates two separately filed appeals from the Order dated September 9, 1992, entered by the Bankruptcy Court, Honorable John S. Dalis, in each of the above-captioned Chapter 13 cases. *In re Johnson,* 145 B.R. 108 (Bankr.S.D.Ga.1992). In Chapter 13 Case No. 91–60628, the debtors, James Luther Johnson, Jr. and Amanda Hendrix Johnson, appeal the Bankruptcy Court's Order and General Motors Acceptance Corporation (GMAC) cross-appeals. In Chapter 13 Case No. 91–60682, GMAC appeals the Order and the debtors, James Larry Hall, Jr. and Deborah F. Hall, filed no cross-appeal. The bankruptcy judge's Order sustains GMAC's objection in each case to confirmation of the debtors' respective proposed Chapter 13 plans and requires the debtors to amend the plans. Because the Order appealed from consolidates the two cases for purposes of addressing GMAC's objections to confirmation, this Order likewise consolidates the appeals.

GMAC is a secured creditor in each case, holding a security interest in a vehicle owned by the debtors.[1] Under the proposed plans, GMAC would retain its liens and receive the amount of its claims or the value of its collateral per the plan, whichever is less, in cash disbursements from the Chapter 13 Trustee over the plan periods.

GMAC objects to the value assigned in the plans to the vehicles. GMAC contends that the debtors undervalued the property. The valuation dispute derives from the parties' disagreement over the proper method of valuation. Each party advocates a method of valuing these vehicles that best serves the party's interest. Specifically, the parties do not agree on the date as of which valuation of GMAC's collateral should be made and further disagree on whether the proper valuation standard is "wholesale" or "retail." The Johnsons contend that the wholesale value of their vehicle as of the date of confirmation should be used for plan confirmation purposes; GMAC maintains that retail value as of the date of filing should be used. The parties stipulated to the National Automobile Dealers Association's (NADA) assessment of the "wholesale" and "retail" values of the vehicle in question on the definitive dates and asked the Bankruptcy Court, using NADA values, to settle their valuation dispute.[2]

The bankruptcy judge valued GMAC's collateral based on its NADA "retail" value at (or near) confirmation. 145 B.R. at 113–15.

---

1. The Johnsons owned a second vehicle but surrendered it to GMAC. The vehicles are more particularly described in the Bankruptcy Court's Order. 145 B.R. at 110.

2. GMAC and the Johnsons stipulated in the Johnsons' case to the "wholesale" and "retail" values at the two definitive dates. In the Halls' case, the parties stipulated only to the "value" of the Halls' vehicle as of the date of confirmation. Because there is no factual dispute regarding the stipulations, they are adopted from the Bankruptcy Court's Order and incorporated herein as if stated verbatim. 145 B.R. at 110–11.

The Johnsons contend the bankruptcy judge erred in concluding retail value is the proper standard, and GMAC, on appeal in the Halls' case and cross-appeal in the Johnsons' case, contends the Bankruptcy Court erred in concluding that the date of confirmation is the proper date as of which value is determined. The Bankruptcy Court's interpretations of the Bankruptcy Code are reviewed *de novo. In re Chase & Sanborn Corp.,* 904 F.2d 588, 593 (11th Cir.1990). Findings of fact may be set aside only if clearly erroneous. Fed. R.Bankr.P. 8013.

The required valuations stem from the so-called "cram-down" provisions in Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1325(a)(5)(B).[3] When a Chapter 13 debtor proposes to retain a secured creditor's collateral and the creditor objects to the plan, the plan may be confirmed over the objection if, assuming all other confirmation criteria are met, *see* § 1325(a)(5), under the plan the secured creditor will 1) retain its lien and 2) receive property—typically but not necessarily deferred cash payments—with a present value not less than its allowed secured claim. § 1325(a)(5)(B).[4] The proposed plans specify that GMAC will retain its lien. At issue is whether the present value of deferred cash payments GMAC will receive if the plans are confirmed and successfully completed is at least equal to GMAC's "allowed secured claim" as required by § 1325(a)(5)(B)(ii).

The value comparison necessitated by § 1325(a)(5)(B)(ii)—the present value of the deferred cash payments compared to the "allowed secured claim"—begins with a determination of the objecting creditor's "allowed secured claim."[5] Section 1325(a)(5) does not define "allowed secured claim." This determination is made by reference to § 506(a), which separates an undersecured creditor's claim into secured and unsecured components based on the value of the collateral securing the claim.[6] Under § 506(a), GMAC's "allowed secured claim" in each case is, effectively, the value of its collateral. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates,* 484 U.S. 365, 366, 108 S.Ct. 626, 627–28, 98 L.Ed.2d 740 (1988).

In this appeal, two specific issues are raised regarding the valuation of GMAC's collateral for purposes of § 1325(a)(5)(B)(ii):

1) Is the collateral valued as of the date of the bankruptcy petition or as of the date of confirmation?

2) Is the valuation standard "wholesale" or "retail"?[7]

Although § 506(a) instructs the court to determine "value," no formula for doing so is given—only the nebulous guidance that "[s]uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such

---

**3.** All statutory references hereafter are to the Bankruptcy Code, Title 11, U.S.C.

**4.** 11 U.S.C. § 1325(a) provides in relevant part: [T]he court shall confirm a plan if—

.   .   .   .   .

(5) with respect to each allowed secured claim provided for by the plan—
  (A) the holder of such claim has accepted the plan;
  (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
  (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
  (C) the debtor surrenders the property securing such claim to such holder[.]

**5.** The adequacy of the proposed plans' rates of interest on deferred distributions to secured claim holders is unchallenged.

**6.** Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount to be so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

**7.** These two issues subsume all issues contained in the parties' statements of issues on appeal.

creditor's interest." § 506(a). That § 506(a) is cast in such generalities is not by accident. The legislative history of § 506 unequivocally indicates that subsection (a) is intended to accommodate a flexible approach to valuations rather than a single, fixed method. H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977) pp. 356–57, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312. Not surprisingly, the obscurity of § 506(a)'s language engenders divergent points of view on the two valuation issues presented by this appeal. *See, e.g., In re Mitchell,* 954 F.2d 557, 560 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992) (standard of valuation is wholesale value); [8] *Matter of Reynolds,* 17 B.R. 489 (Bankr. N.D.Ga.1981) (retail is proper standard); *In re Jones,* 5 B.R. 736 (Bankr.E.D.Va.1980) (average of wholesale and retail is proper standard); *In re Robertson,* 135 B.R. 350 (Bankr.E.D.Ark.1992) (valuation must be made as of date of confirmation); *Matter of Van Nort,* 9 B.R. 218 (Bankr.E.D.Mich.1981) (valuation must be made as of the date of the petition). The Eleventh Circuit Court of Appeals has not addressed these two issues.

The Bankruptcy Court relied exclusively on § 506(a)'s directive that value be determined "in light of the purpose" of the valuation (*see* note 6, *supra*) in concluding that § 1325(a)(5)(B)(ii) valuations should be made as of (or near) the date of confirmation. 145 B.R. at 112–13. The Bankruptcy Court reasoned, and on appeal the Johnsons argue, that valuing GMAC's collateral as of the date these Chapter 13 cases were filed contradicts this language in § 506(a) since here the purpose of the valuation regards confirmation. Although many courts agree with this line of reasoning, this Court declines to follow the Bankruptcy Court's approach.

■ The date on which the bankruptcy petition is filed and the order for relief is entered is the watershed date of a bankruptcy proceeding. As of this date, creditors' rights are fixed (as much as possible), the bankruptcy estate is created, and the value of the debtor's exemptions is determined.

Though the timing of the value determination required by § 1325(a)(5)(B)(ii) is not prescribed therein, in § 506(a), or elsewhere in the Bankruptcy Code, the scheme of Chapter 13 in attempting to accommodate competing goals of financial rehabilitation for the debtor and preservation of the constitutionally protected, bargained-for rights of secured creditors is best served by valuing the collateral as of the date of filing.

From the point of the bankruptcy filing, creditors are held at bay by the automatic stay to give the debtor the breathing spell necessary to facilitate financial rehabilitation. To ensure that the bankruptcy system's interference with the secured party's right to enforce its security interest does not abridge the secured party's property interest, the Bankruptcy Code requires that the secured party's interest be adequately protected as a condition for maintenance of the stay and the debtor's continued use of the collateral. *See* §§ 362(d)(1), 363(e). The date the petition is filed and the bankruptcy case is commenced is the point where the secured creditor's rights are first impacted by the bankruptcy and the tension between adequate protection of such rights and a meaningful chance at rehabilitation under Chapter 13 for the debtor begins. *See In re Beard,* 108 B.R. 322, 326 (Bankr.N.D.Ala.1989). The logical point as of which to ascertain property interests that must be adequately protected throughout an ensuing Chapter 13 bankruptcy proceeding is the point where the bankruptcy begins—the date of filing.

■ That value should be determined as of the commencement of the bankruptcy case is obvious where the collateral is depreciable personal property. Applying § 1325(a)(5)(B) to subjugate an objecting secured creditor to a plan that assigns a value to its collateral lower than the collateral's value when the bankruptcy case was filed raises Fifth Amendment takings concerns. The Bankruptcy Court circumvented this dilemma by utilizing § 507(b) in the application of § 1325(a)(5)(B)(ii). Section 507(b) would, under the Bankruptcy Court's analysis, autho-

---

8. Other terminology is sometimes used in reported cases that in this context is synonymous with "wholesale" and "retail." The bankruptcy judge reviewed some of the common terminology at 145 B.R. at 115 n. 10.

rize a "superpriority" expense claim—a claim payable ahead of all other administrative expense claims—to the extent of any depreciation between the date of filing and the date of confirmation. This approach, even if technically correct,[9] unnecessarily complicates the administration of the secured party's claim in the Chapter 13 case. The Bankruptcy Court would have to accept evidence at the confirmation hearing of the value of the collateral as of the date of filing and as of the date of confirmation, make a value determination as of the two dates, compare the values, and award the secured creditor a tripartite claim comprising its secured claim, its § 507(b) claim, and an unsecured claim for the balance of the debt. Perhaps appealing in the abstract as a means of avoiding a takings problem, this approach is impractical for the average Chapter 13 case. Moreover, it yields essentially the same net result for the secured creditor as would valuing the collateral as of the date of filing. Thus in my view, injecting § 507(b) into the otherwise straightforward comparison called for by § 1325(a)(5)(B)(ii) is improper.

■ On the issue of the correct § 1325(a)(5)(B)(ii) valuation standard, the parties presented the Bankruptcy Court with a choice between "wholesale" and "retail." The Bankruptcy Court, in holding that retail value is determinative for purposes of § 1325(a)(5)(B)(ii), relied on another portion of § 506(a). The Bankruptcy Court reasoned that § 506(a)'s "proposed disposition or use" language (see note 6, *supra*) supports retail value where, as here, the debtors propose to retain and use the collateral. I respectfully disagree with this analysis.

■ Although the "proposed disposition or use" language in § 506(a) is sufficiently malleable to support more than one opinion on this issue, my impression of this language in light of all the possible valuations called for in the Bankruptcy Code, particularly Chapters 11 and 12, is that it is intended to address more significant value determinations than the relatively minor league valuations required in the Chapter 13 cram-down

context. In a Chapter 13 cram-down, the debtor will *always* have proposed retention of the collateral; otherwise, § 1325(a)(5)(B)(ii) does not apply. *See* § 1325(a)(5)(C). The "proposed disposition or use" language in § 506(a) does not imply that valuations for purposes of Chapter 13 confirmations can be pigeon-holed as a choice between NADA "wholesale" and "retail" values, as counsel presented the issue. Indeed, the legislative history of § 506(a) makes clear that "value" "does *not* necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interest in the case." H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977) p. 356, U.S.Code Cong. & Admin.News 1978, p. 5787 (emphasis supplied). A fixed "wholesale" or "retail" standard for § 1325(a)(5)(B)(ii) valuations is inconsistent with § 506(a)'s aversion to standardized procedure.

■ The Court acknowledges, however, that NADA "wholesale" and "retail" values are widely used in the automobile industry and by courts to simplify and expedite the valuation process. Nevertheless, the Bankruptcy Code nowhere implies that NADA "wholesale" and "retail" values should operate as any sort of a standard for measuring compliance with § 1325(a)(5)(B)(ii). To the contrary, exclusive reliance on industry averages may contradict the Court's duty under § 506(a) to determine the value of the specific collateral in the case before it.

■ Instead, the parties should attempt to prove and the Court should determine the property's fair market value. *See* § 522(a)(2). Fair market value is "[t]he amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." *Black's Law Dictionary* 537 (5th ed. 1979). *Cf. Mat-*

---

9. Before a § 507(b) claim may be awarded, § 503(b) requires that notice issue and a hearing be held to determine whether the claim reflects

"the actual, necessary costs and expenses of preserving the estate...." § 503(b)(1)(A).

*ter of Willis,* 6 B.R. 555, 558 (Bankr.N.D.Ill. 1980) (defining "market value"). Ascertaining "fair market value" is an objective broad enough to permit use of NADA guidebooks and similar authoritative sources as evidence of value, but without implying that the valuation determination is limited to those sources. Thus, the debtor(s) and the secured creditor may offer NADA guidebooks (along with any other relevant evidence) to support their contentions regarding the subject property's fair market value; the Court is not confined, however, to a given column and line within the guidebook in reaching its value determination. Applying common sense and personal experience with similar valuations, the judge must reach a fair market value determination based on the totality of the relevant evidence tendered.

For the foregoing reasons, the Bankruptcy Court's Order dated September 9, 1992, entered in Chapter 13 cases No. 91–60628 and No. 91–60682 is REVERSED. Both cases are REMANDED for further proceedings consistent with this decision.

Because this appeal presents issues that are recurrent and district-wide, the Court has entered this Order On Appeal by the act of the presiding judge and with the concurrence of the Chief Judge of the district.