**In re Lynnwood Allan THOMAS, Sr., Jean Denice Thomas, Debtors.**

**NORWEST FINANCIAL GEORGIA, INC., Objecting Creditor,**

v.

**Lynnwood Allan THOMAS, Sr., Jean Denice Thomas, Debtors,**

and

**Barnee C. Baxter, Chapter 13 Trustee, Respondents.**

**Bankruptcy No. 94–10572.**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

Feb. 16, 1995.

Scott J. Klosinski, Augusta, GA, for objecting creditor.

Lee Ringler, Augusta, GA, for debtors.

**ORDER**

JOHN S. DALIS, Bankruptcy Judge.

Came on for hearing confirmation of debtors' amended plan under Chapter 13 of Title 11, United States Code, and the objection to confirmation filed by Norwest Financial Georgia, Inc. ("Norwest"). Norwest's objection was filed in response to the original plan and motion, which proposed to avoid the lien of Norwest under 11 U.S.C. § 522(f):

5. Pursuant to 11 U.S.C. § 522(f), the liens, including judicial liens, if any, of the following creditors on the property of the debtor(s) are voided upon confirmation of the plan to the extent that such liens impair an exemption claimed by the debtor(s) or to which the debtor(s) would have been entitled under 11 U.S.C. § 522(b): ... Norwest Financial.

Paragraph 5 Chapter 13 plan and motion dated April 13, 1994 and filed April 14, 1994. The debtors modified their Chapter 13 plan which does not include a motion to avoid Norwest's lien under § 522(f), but proposes to value Norwest's collateral at $0 and pay it nothing on its claim as secured:

... 2. ... (b) Secured creditors shall retain liens securing their claims. Creditors who file claims and whose claims are allowed as secured claims shall be paid the lesser of (1) the amount of their claim, or (2) the value of their collateral as set forth here [after each creditor's name]: ... Norwest Fin.: –0–; ....

To the extent that any claim is a partially secured claim and a partially unsecured claim pursuant to 11 U.S.C. § 506(a), that portion of the claim which is unsecured shall be provided for as an unsecured claim under this plan. Creditors holding such claims shall retain their liens only to the extent of their allowed secured claim. To the extent that the allowed secured claim is paid during this case such creditors' liens shall be reduced.

Paragraph 2 amended Chapter 13 plan and motion dated August 23, 1994 and filed August 24, 1994.

Under this proposal, claims which are wholly unsecured, as Norwest's is, will be provided for as unsecured claims with the liens purporting to secure such claims being avoided, presumably under § 506(d).[1] At hearing I determined that the amount of the debts secured by liens superior to Norwest's lien and covering the same property exceeded the value of the property, thereby rendering Norwest's claim under the plan wholly unsecured.

On debtors' Schedule "D" ("Creditors Holding Secured Claims") the debtors listed both first and second deeds to secure debt on their home, valued on Schedule "D" and on Schedule "A" ("Real Property") at $61,500. The first deed to secure debt, as scheduled, secures a $63,000 debt, while Norwest holds a second deed to secure debt[2] as security for its scheduled $2,560 debt.[3] At hearing, it was argued that the house was actually worth at least $63,000, which would still leave no value above the first secured debt to secure any part of Norwest's claim. Norwest argues that at the time the junior lien was given there was at least $1,000 worth of equity in the house: the debt secured by the senior lien was $62,000, and the value of the house was $63,000. Norwest alleges that between the time of the granting of its junior lien and the time of filing the petition, debtors defaulted on the loan secured by the senior lien, thereby increasing that debt and eliminating any value in the property for Norwest as junior lienholder. This argued equity fluctuation leads Norwest to question the time at which a claim is determined to be secured.

The rule in this district is that,

[t]he date on which the bankruptcy petition is filed and the order for relief is entered is

---

1. 11 U.S.C. § 506(d) provides:
   To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—
   (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
   (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

2. Debtors' Schedule "D" also lists another creditor, Thomas J. Matthews, as holding a second deed to secure debt securing a debt of $1,374.39. The schedules do not reveal when the various deeds to secure debt were granted and/or filed for record, which would reveal the priority of the security deeds. However, it is not disputed that Norwest's security interest is junior to the $63,000.00 secured debt.

3. The proofs of claim executed by Norwest April 29, 1994 and filed May 4, 1994 show a $2,119.24 secured claim, as well as a $168.00 claim for prepetition payment arrears, which are based on a note executed by the debtors in the principal amount of $2,160.00, not $2,560.00 as the debtors' schedules indicate.

the watershed date of a bankruptcy proceeding. As of this date, creditors' rights are fixed (as much as possible).... [t]he scheme of Chapter 13 in attempting to accommodate competing goals of financial rehabilitation for the debtor and preservation of the constitutionally protected, bargained-for rights of secured creditors is best served by valuing the collateral as of the date of filing.

*In re Johnson,* 165 B.R. 524 at 528 (S.D.Ga. 1994).

Under *Johnson,* the value of the property securing Norwest's claim is determined as of the date of filing. *Id.* The amount of the claim itself is also to be determined as of the date of filing. *Id.; see also,* 11 U.S.C. § 502(b).[4] In this case, the value of the real property subject to the deeds to secure debt was claimed to be $63,000. I found $63,000 as the value of the property and $63,000 as the amount of the debt secured by the senior lien as of the time of filing, leaving no value in the collateral which might partially secure Norwest's claim under 11 U.S.C. § 506(a).[5]

▉ Because Norwest's claim is entirely unsecured, the debtor proposes to void the lien asserted by Norwest, apparently under § 506(d), while Norwest argues that its rights may not be so modified due to the protection granted under § 1322(b)(2)[6] to the holder of a claim secured only by a lien on debtor's home. Norwest maintains, therefore, that because its claim, although wholly unsecured, includes a lien by a deed to secure debt on the debtors' principal residence, it is a holder of a claim secured only by a security interest in the debtors' home

entitled to the protection granted by § 1322(b)(2). This assertion contradicts all case authority addressing the issue after the United States Supreme Court's holding in *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), which resolved the split between the Circuit Courts of Appeal regarding whether a lender whose claim was secured only by the debtor's principal residence could have its claim bifurcated under § 506(a) into secured and unsecured components. The Supreme Court found that bifurcation of such a creditor's claim, determined under § 506(a) to be only partially secured by a security interest in the debtor's principal residence, was impermissible under § 1322(b)(2), relying on the finding that even after bifurcation the lender still held a secured claim which entitled it, under § 1322(b)(2), to protection of all of its rights arising under the security instrument.

The *Nobelman* opinion strongly suggests, however, that if a lien is completely undersecured, there would be a different result. The opinion relies on the fact that, even after bifurcation, the creditor in the case was "still the 'holder' of a 'secured claim' because petitioners' home retain[ed] $23,000 of value as collateral." [Citation omitted] If the creditor had held a lien on property that had no value (perhaps because the property was fully encumbered by prior liens), then under this analysis it would not have been a "holder of a secured claim" entitled to protection by section 1322(b)(2).

5 *Collier on Bankruptcy* ¶ 1322.06 at 1322–16 (15th Ed.1994). Under this reading of *No-*

4. 11 U.S.C. § 502(b) states in pertinent part:

Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, **the court,** after notice and a hearing, **shall determine the amount of such claim ... as of the date of filing of the petition** (emphasis added)....

5. 11 U.S.C. § 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the

case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed distribution or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

6. 11 U.S.C. § 1322(b)(2) states in pertinent part

(b) ... the plan may—
... (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence....

*belman,* a creditor would have to be determined under § 506(a) to be at least partially secured in order to fall within the parameters of § 1322(b)(2). All courts addressing the issue following *Nobelman* have held just that. *See, e.g., In re Woodhouse,* 172 B.R. 1 (Bankr.D.R.I.1994) (second mortgagee entitled to protection under § 1322(b)(2) only if actually secured to some extent by debtor's principal residence); *In re Moncrief,* 163 B.R. 492 (Bankr.E.D.Ky.1993) (to escape modification a claim must be secured to some extent by a security interest in debtor's primary residence); *In re Sette,* 164 B.R. 453 (Bankr.E.D.N.Y.1994) (rights of totally unsecured holders of second mortgage may be modified under § 1322(b)(2)); *In re Lee,* 161 B.R. 271 (Bankr.W.D.Okl.1993) (wholly unsecured second mortgagee is holder of only unsecured claim not entitled to protection under § 1322(b)(2)); *In re Plouffe,* 157 B.R. 198 (Bankr.D.Conn.1993) (under *Nobelman,* to qualify for protection under § 1322(b)(2) mortgagee's claim must be secured to some extent by security interest in real property that is debtor's principal residence).

While conceding that the case authority unanimously supports avoiding its junior, unsecured lien, Norwest also correctly points out that no district or circuit court has yet directly spoken on the issue. Norwest urges me to disregard this persuasive authority as a "hyper-technical" reading of *Nobelman,* arguing that to permit avoidance of the wholly unsecured lien encourages "claim-purchasing" as well as careful planning of default and bankruptcy filing by debtors.

The so-called "claim purchasing" which Norwest warns against encouraging is the imagined consolidation of senior and junior liens by a junior lienholder purchasing the senior lien, merging the two formerly separate claims, and in the process dodging avoidability of the formerly junior lien. In this hypothetical, Norwest fails to provide the basis for merging the two claims. This claim buyout would simply leave the junior

mortgagee-claim purchaser with two claims, rather than one. *In re Littleton,* 177 B.R. 407 (Bankr.S.D.Ga.1995) (a creditor cannot by merger with another creditor retroactively secure an instrument under the provisions of an earlier instrument it acquires by merger after execution of the later instrument.) My holding in *Littleton* referred specifically to the merger of two banks, but the same rule applies preventing a creditor from retroactively securing its existing debt under the terms of an after-acquired yet earlier-executed security instrument.

Norwest also warns that permitting avoidance of junior unsecured liens encourages bankruptcy planning by debtors, imaginatively suggesting that debtors could carefully plot the time of filing to follow default to a senior lienholder to increase that debt and eliminate any value by which a junior lienholder might be partially secured and thereby escape avoidance of its lien under 11 U.S.C. § 1322(b)(2). In the event that such careful bankruptcy planning does occur, the junior lienholder could raise an objection to confirmation under § 1325(a)(3) [7] as a case filed in bad faith. I cannot justify extending the protection of § 1322(b)(2) to wholly unsecured mortgagees in direct opposition to the unanimous line of cases denying such protection under such imagined threat of bankruptcy planning and lien-dodging. I can see no reason, based on these policy arguments, to accept Norwest's invitation to extend the protection of § 1322(b)(2) to junior lienholders whose claims are wholly unsecured.

IT IS THEREFORE ORDERED that Norwest's objection to confirmation is OVERRULED.

---

7. 11 U.S.C. § 1325 provides, in relevant part:
  (a) Except as provided in subsection (b), the court shall confirm a plan if—
    (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title; ...

(3) **the plan has been proposed in good faith** and not by any means forbidden by law; (emphasis added)....