**In re Joe Ed EDWARDS and Linda June Edwards, Debtors.**

**Western Interstate Bancorp, successor to Firstplus Financial, Inc. Creditor,**

**v.**

**Joe Ed Edwards and Linda June Edwards, Debtors.**

**Bankruptcy No. 99–10783.**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

March 3, 2000.

Mr. Mark L. Wilhelmi, Attorney at Law, Augusta, GA, for Creditor.

Mr. Lee Ringler, Attorney at Law, Augusta, GA, for Debtors.

### ORDER

JOHN D. DALIS, Chief Judge.

Western Interstate Bancorp, the successor to Firstplus Financial, Inc., ("Creditor") objects to confirmation of the chapter 13 plan proposed by Joe Ed Edwards and Linda June Edwards ("Debtors"), on the grounds that Debtors' plan attempts to modify Creditor's second mortgage loan claim in contravention of 11 U.S.C. § 1322(b)(2). That subsection of the Bankruptcy Code bars chapter 13 plan modification of the rights of holders of claims secured only by real property that is the debtor's primary residence. 11 U.S.C. § 1322(b)(2). Debtor maintains that the loan is completely undersecured, and that a completely undersecured mortgage loan is not protected from modification by § 1322(b)(2). Creditor makes two counterarguments: first, that equity does exist in the subject property sufficient to qualify Creditor's claim for § 1322(b)(2) protection; and second, that § 1322(b)(2) protection does not require the existence of any equity whatsoever. Creditor's objection to confirmation is overruled. Debtor's chapter 13 plan is confirmed.

The facts of this case are as follows. In November, 1994, Debtors bought their primary residence, property located at 4716 Broad Oak Court, Augusta, Georgia ("Residence"). The entire purchase price, $100,900, was financed with a loan from the Veterans Administration secured by a first in priority security deed on the Residence. In September, 1997, Debtors borrowed $35,000 from Creditor, securing this loan with a second security deed on the Residence. The Second Mortgage or Home Improvement Loan Application, signed by both Debtors, lists the value of the Residence as $112,000 and the balance

owed the first lienholder as $103,000. Mr. Edwards testified that he did not supply the $112,000 value; instead, he told Creditor that the Residence's value was around $98,000 or $100,000, and that Debtors owed more than the value of the Residence. However, Creditor considered the loan as secured with a second mortgage then valued at $9,000. Debtors subsequently placed a third lien on the Residence, borrowing about $5,900 to install vinyl siding and soffits on the Residence.

Debtors filed a chapter 13 bankruptcy petition in March, 1999. They valued the Residence at $100,500, debt on the first mortgage as $110,000, and debt on the second mortgage as $35,800. (The claims register, as of June, 1999, showed the first mortgage debt at $110,279.70 and Creditor's second mortgage debt at $35,702.66. These figures are rounded to $110,300 and $35,700 in the remainder of this Order as a matter of convenience.) Thus, the entire value of the Residence was less than the first mortgage, leaving no equity to secure Creditor's second mortgage. Debtors' chapter 13 plan seeks to treat Creditor as completely undersecured, with a secured claim of zero and an unsecured claim for the full $35,700.

Is Creditor's claim protected from being modified in Debtor's chapter 13 plan by 11 U.S.C. § 1322(b)(2)? No.

11 U.S.C. § 1322. Contents of plan

(b) Subject to subsections (a) and (c) of this section, the plan may -

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

The Court has jurisdiction to hear this matter as a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(A),(B),(L) & (O) and 28 U.S.C. § 1334 (1994).

Section 1322(b)(2) bars a chapter 13 debtor from modifying a partially secured claim that is secured only by the debtor's principal residence. *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Such a claim is not bifurcated into secured and unsecured claims.[1] 11 U.S.C. §§ 506(a) & 1322(b)(2); *Nobelman,* 508 U.S. at 332, 113 S.Ct. 2106. Instead, the full amount of the claim is protected from modification. *Id.* Therefore, if the value of the Residence had been greater than the first mortgagee's claim, greater than $110,300, then Creditor's claim would be at least partially secured and protected from modification. *Id.*

 Creditor contends that the value of the Residence is greater than $110,300. Creditor points to the 1997 Loan Application, which stated the value of the Residence as $112,000 and was signed by Debtors, as evidence that a determination of value greater than $110,300 is warranted. However, the value of the Residence is determined as of the commencement of the bankruptcy case. *Norwest Fin. Ga., Inc. v. Thomas (In re Thomas),* 177 B.R. 750, 751–52 (Bkrtcy.S.D.Ga.1995) (citing *Johnson v. General Motors Acceptance Corp. (In re Johnson),* 165 B.R. 524, 528 (S.D.Ga.1994)). A form filled out in September, 1997, does not evidence property value as of March, 1999, especially when no appraisal or other basis for the 1997 value is offered. Creditor also reasons

---

1. 11 U.S.C. § 506. Determination of secured status (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

that the vinyl siding and soffits installed by means of a third mortgage added value to the house such that the current value should be over, not under, the original purchase price of $100,900. Purchase price plus improvements does not establish value. *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997); *Nobelman*, 508 U.S. at 325–26, 113 S.Ct. 2106; *Johnson*, 165 B.R. at 529. Fair market value, what a willing seller and a willing purchaser would pay for the property in an arms length transaction as of the date of the filing of the bankruptcy petition, establishes value for Chapter 13 purposes. *Id.; Thomas*, 177 B.R. at 751–52. Mr. Edwards based his opinion of value in part upon valuation established by an appraiser hired by Mr. Edwards who estimated market value of the Residence at either $98,-000 or $98,500. Other than the 1997 loan application, Creditor failed to offer any evidence to rebut Debtor's testimony. I find that the value of the Residence, as of commencement of the bankruptcy case, was less than the debt of $110,300 owed the first lienholder. Creditor's claim is therefore completely undersecured.

■ Next, Creditor questions whether a completely undersecured claim, with a lien on the debtor's principal residence, may be modified in a chapter 13 plan under § 1322(b)(2). The Supreme Court did not address the treatment of a completely undersecured mortgage loan in *Nobelman*; nor has it done so since. 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228. Subsequently, consensus has not been reached in the case law.[2]

Some courts interpret *Nobelman* as holding that all claims secured only by a lien on the debtor's principal residence, even wholly undersecured claims, are protected from modification by § 1322(b)(2). 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228; *In re Perry*, 235 B.R. 603 (S.D.Tex. 1999); *American Gen. Fin., Inc. v. Dickerson*, 229 B.R. 539 (M.D.Ga.1999); *In re Johnson*, 160 B.R. 800 (S.D.Ohio 1993); *Tanner v. Firstplus Fin. Inc. (In re Tanner)*, 223 B.R. 379 (Bkrtcy.M.D.Fla.1998). This interpretation rests on the phrase within § 1322(b)(2) which allows a bankruptcy plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims ... " 11 U.S.C. § 1322(b)(2); *Nobelman*, 508 U.S. at 331, 113 S.Ct. 2106; *Dickerson*, 229 B.R. at 542.

> "As the Nobelman Court found, in the clause prohibiting homestead liens, Congress could have repeated the term of art 'secured claim,' " but it chose to use the phrase "a claim secured ... by" instead. The chosen language does not specify that the claim must be secured by a certain level of equity in the underlying collateral. Rather, the only requirement is that the claim is secured by the debtor's principal residence. Thus, the emphasis in the statute is on the fact that a lien exists on the property, not the value of such property.

*Dickerson*, 229 B.R. at 542.

The stronger line of cases holds that *Nobelman* calls for some equity in the collateral. 508 U.S. 324, 113 S.Ct. 2106,

---

2. Six district courts and one bankruptcy appellate panel have considered chapter 13 plan treatment of completely undersecured mortgage loans. (citations infra.) Of these seven cases, four held that such claims could be modified, and three the opposite. Bankruptcy court decisions can be found in support of both propositions. Within the Eleventh Circuit bankruptcy courts, an Alabama and a Georgia case each held that a completely undersecured claim could be modified, while a Florida court held that it could not. (citations infra.) Bankruptcy treatises also lack unanimity. *Collier's* states that *Nobelman* calls for completely undersecured claims to be modifiable and cites no cases to the contrary. 8 Lawrence P. King ed., *Collier on Bankruptcy* ¶ 1322.06[1][a] at 1322–21 (15th ed. rev. 1996). In contrast, Judge Keith Lundlin proposes that § 1322(b)(2) protection from modification is triggered by "the existence of a lien, not the presence of value to support that lien." *Keith M. Lundlin, Chapter 13 Bankruptcy* § 4.46, at 4–56 (2nd ed.1994).

124 L.Ed.2d 228; *Johnson v. Asset Mgmt. Group, LLC,* 226 B.R. 364 (D.Md.1998); *Lam v. Investors Thrift (In re Lam),* 211 B.R. 36 (9th Cir. BAP 1997); *Associates Fin. Servs. v. Purdue (In re Purdue),* 187 B.R. 188 (S.D.Ohio 1995); *Wright v. Commercial Credit Corp.,* 178 B.R. 703 (E.D.Va.1995), *appeal dismissed,* 77 F.3d 472, 1996 WL 63023 (1996); *Norwest Fin. Ga., Inc. v. Thomas (In re Thomas),* 177 B.R. 750 (Bkrtcy.S.D.Ga.1995); *In re Lee,* 177 B.R. 715 (Bkrtcy.N.D.Ala.1995). A completely undersecured mortgage claim cannot qualify for § 1322(b)(2) protection from modification. *Id.* In the context of the bifurcation of a partially secured second mortgage claim, the Supreme Court found that the language § 1322 focused on the rights of lienholders rather than on the value of the claim. *Id.* However, *Nobelman* indicates that a completely undersecured claim, a claim secured by a lien attaching no value at all, cannot count as secured even for the phrase "a claim secured ... by." 508 U.S. at 328–29, 113 S.Ct. 2106; *Johnson,* 226 B.R. at 367; *Lam,* 211 B.R. at 40; *Purdue,* 187 B.R. at 190; *Wright,* 178 B.R. at 707; *Thomas,* 177 B.R. at 752–53. To be protected from modification, a claim must be secured with a lien attaching actual value in the collateral.

> By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioners' home. Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim. ... But even if we accept petitioners' valuation, the bank is still the " 'holder' of a 'secured claim,' because petitioner's home retains $23,500 of value as collateral."

*Nobelman,* 508 U.S. at 328–29, 113 S.Ct. 2106. A claim that is completely undersecured cannot meet this description. *Id.*

As determined above, the value of the Residence is less than the first lienholder's claim. No equity in the Residence secures Creditor's second mortgage claim. It is completely undersecured. Therefore, § 1322(b)(2) does not bar modification of Creditor's claim by Debtor's chapter 13 plan.

It is, therefore, ORDERED that the objection to confirmation filed by Western Interstate Bancorp, successor to Firstplus Financial Inc., in bankruptcy case number 99–10783, Joe Ed Edwards and Linda June Edwards, is overruled. In that the chapter 13 plan filed by Joe Ed Edwards and Linda June Edwards, in bankruptcy case number 99–10783, meets all other criteria for confirmation, the plan is confirmed.