In re Rickie D. **PUTMAN** and Lorraine A. Putman, Debtors.

Rickie D. Putman and Lorraine A. Putman, Plaintiffs

v.

AM Solutions, LLC, Defendant.

Bankruptcy No. 13–14781–JDW.
Adversary No. 14–01035–JDW.

United States Bankruptcy Court, N.D. Mississippi.

Filed Sept. 5, 2014.

---

Kevin F. O'Brien, Southaven, MS, for Plaintiffs.

James C. Martin, Martin Law Office, LLC, Clinton, MS, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

JASON D. WOODARD, Bankruptcy Judge.

This matter came before the Court for hearing on July 16, 2014, on the Motion to Dismiss Adversary Proceeding (the "Motion") (A.P. Dkt. # 5)[1] filed by AM Solutions, LLC (the "Defendant") and the Response filed by plaintiffs Rickie D. Putman and Lorraine A. Putman (the "Debtors")(A.P. Dkt. # 12). At the hearing on the Motion, James C. Martin appeared as attorney for the Defendant, and Kevin F. O'Brien appeared as attorney for the Debtors. The Court heard the arguments of counsel and, at the conclusion of the hearing, directed both parties to file a list

---

**1.** Citations to the docket in the main bankruptcy case will be to "Bankr.Dkt. # ____," and citations to the adversary proceeding will be to "A.P. Dkt. # ____."

of supporting authorities, which they filed on August 4, 2014 (Debtors, A.P. Dkt. #14; Defendant, A.P. Dkt. #15). For the reasons stated below, the Motion to Dismiss is due to be granted.

## A. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (K), and (O).

## B. Standard for Motion to Dismiss

Although the Motion to Dismiss does not set forth the rule under which the Defendant is seeking dismissal of this case, the Court will treat the Motion to Dismiss as being filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure[2] for failure to state a claim upon which relief can be granted. As such, the Court must construe the Complaint liberally in favor of the plaintiff as the non-moving party and assume the truth of all well-pleaded facts. *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir.2002) (citing *Brown v. Nationsbank Corp.,* 188 F.3d 579, 586 (5th Cir.1999)). In order to survive a motion to dismiss, a complaint may not rest on mere conclusions, but must assert specific facts, and the claim for relief must also be "plausible." *In re Oxford Expositions, LLC,* 466 B.R. 814, 816 (Bankr.N.D.Miss.2011) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "A plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). Allegations that show only a "sheer possibility" of misconduct by the defendant are insufficient to withstand a motion to dismiss. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Generally, a court ruling on a motion to dismiss may rely only on the complaint and its proper attachments. *Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 286 (5th Cir. 2006). In addition, a court may also rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir.2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)).

## C. Procedural History and the Issue before the Court

The Debtors filed their chapter 13 bankruptcy petition on November 13, 2013 (the "Petition Date") (Bankr. Dkt. #1).

Ocwen Loan Servicing, LLC ("Ocwen") is the loan servicer and authorized agent for Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Home Equity Loan Trust 2006–1, which holds the first deed of trust on the Debtors' home. The Defendant holds a second deed of trust on the Debtors' home. On March 27, 2014, Ocwen filed Proof of Claim No. 16–1 (the "Proof of Claim") in the amount of $171,031.93. On May 27, 2014, Ocwen also filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges, adding $150.00 for "Review of Plan and Notice of Appearance," categorized as bankrupt-

---

**2.** Rule 12 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

cy/proof of claim expenses (the "Notice of Postpetition Charges")(Bankr.Dkt. # 38). No objections have been filed to either the Proof of Claim or the Notice of Postpetition Charges. The Defendant filed Proof of Claim No. 12–1 on February 12, 2014, in the amount of $63,340.62, secured by a second deed of trust on the Debtors' home.[3]

On April 17, 2014, the Debtors filed this adversary proceeding against the Defendant, alleging that the Defendants' second lien is wholly unsecured and should be stripped off pursuant to 11 U.S.C. §§ 506 and 1322(b)(2).[4] The Debtors contend that the Court should use the current amount of Ocwen's claim, including post-petition interest, fees, and charges, to determine whether there is any equity remaining to support the Defendant's second-position lien. The Defendant disagrees, arguing that the Court should use the claim amount as of the petition date under § 502(b). Determination of the correct date is a legal issue, and it controls the outcome of the Motion to Dismiss.

In this case, the parties agree that the collateral at issue is the Debtors' principal residence. For purposes of the Motion to Dismiss, the parties also agree that the value of the residence is $171,701.00.[5] The parties disagree as to the value of Ocwen's secured claim, but only because they disagree about the proper date on which that claim should be valued. The only issue

before the Court, then, and the one on which the resolution of the Motion to Dismiss depends, is the legal issue of determining the proper date for valuation of secured claims for the purpose of ascertaining whether the Defendant is wholly unsecured or simply undersecured. That determination controls whether or not the Debtors may strip off the Defendant's junior lien on their home. For the purposes of the Motion to Dismiss only, the parties agree that if the petition date is the appropriate date, then the Motion to Dismiss should be granted, because no relief can be granted if there is even a penny of equity to support the Defendant's second lien.[6] The parties also agree that if some later date is the proper date for this equity determination, then the Motion to Dismiss is due to be denied because Ocwen's claim almost immediately increased above the value of the home.

### D. The Amount of Ocwen's Secured Claim

In support of the Complaint, the Debtors attached a payoff statement they received from Ocwen as Exhibit A to the Complaint (the "Payoff Letter"). The Payoff Letter, dated December 12, 2013, reflects a payoff of $172,970.22 as of December 19, 2013 (a little over a month after the Petition Date), which includes the following breakdown:

3. Defendant also filed Proof of Claim No. 11–1 on that same date, which is identical to Proof of Claim No. 12–1, but does not attach a copy of the note and deed of trust, which are attached to Proof of Claim No. 12–1.

4. All statutory references are to Title 11, United States Code (the "Code" or the "Bankruptcy Code"), unless otherwise noted.

5. This is the valuation claimed by the Debtors both on their Schedule A and in the Complaint, and is based on the value assigned to the property by the county tax assessor. If

the Motion to Dismiss is denied, the Defendant has reserved the right to attempt to prove a higher valuation at trial.

6. As discussed below, a debtor may strip off a wholly undersecured lien but may not bifurcate an undersecured lien on his principal residence. *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee),* 212 F.3d 277, 285 (5th Cir.2000).

| Description | Amount Due |
|---|---|
| Principal | 169, 862.43 |
| Interest | 2,407.79 |
| Review of Plan/Notice of Appearance | 150.00 |
| Bankruptcy Fee | 450.00 |
| Bankruptcy Expense | 100.00 |
| **Total Amount Due** | **$172,970.22** |

The Payoff Letter specified that the interest set forth in the above figures included $1,031.91 in interest for October 9, 2014 to November 8, 2013, and $1,031.91 in interest for November 9, 2013 to December 8, 2013, with interest accruing at the rate of $34.39714200 per day. If the Court used this figure as the value of the first lien, the Motion to Dismiss would be due to be denied, because, for purposes of the Motion to Dismiss, Ocwen would be presumed undersecured by $1,938.29, leaving no equity to support the Defendant's second lien.[7] However, neither the Debtors nor the Defendant contend that the Payoff Letter provides the appropriate valuation of Ocwen's claim, although this is the value addressed by the Defendant in the Motion to Dismiss.

Instead, the Debtors allege that $171,766.33 is the appropriate value of Ocwen's secured claim. To arrive at this figure, the Debtors performed the following calculations:

| Description | Amount |
|---|---|
| Principal | 169,862.43 |
| Interest October 9, 2013–November 8, 2013 | 1,031.91 |
| Interest November 9, 2013–November 12, 2013 | 171.99 |
| Bankruptcy Fee | 450.00 |
| Bankruptcy Expense | 100.00 |
| **Total Alleged Due by Debtors** | **$171,766.33** |

The difference between the Debtors' calculations and Ocwen's calculations on the Proof of Claim is that the Debtors included an extra day of per diem interest for the Petition Date itself, as well as the $450.00 Bankruptcy Fee and the $100.00 Bankruptcy Expense, neither of which were included in Ocwen's Proof of Claim or Notice of Postpetition Charges.[8] Fees or expenses incurred as a result of the bankruptcy case are necessarily post-petition fees and expenses. If the Court uses the Debtors' figures, Ocwen would be deemed undersecured by $734.40 (and the Defendant wholly unsecured), and the Motion to Dismiss would again be due to be denied.

Each of the above scenarios, however, presumes that the date on which the Court should value Ocwen's secured claim of is some date later than the Petition Date. If the proper date to value Ocwen's secured claim for purposes of determining equity available to secure the Defendant's second lien is the Petition Date, then the Proof of Claim amount properly reflects Ocwen's

---

7. Neither the Debtors nor the Defendant contend that the Payoff Letter provides the appropriate valuation of Ocwen's secured claim. The Defendant does address the total amount due as reflected by the Payoff Letter in its Motion to Dismiss.

8. The Debtors supply no reason why post-petition interest would not be an appropriate part of Ocwen's secured claim if post-petition fees and charges are. *See* 11 U.S.C. § 506(b).

secured claim of $171,031.93. Subtracting the amount of Ocwen's Proof of Claim from the agreed value of $171,701.00 would then yield $669.07 of equity in excess of Ocwen's first lien to secure the Defendant's second lien. In that case, the Motion to Dismiss would be due to be granted.

### E. Modifying Secured Claims in Chapter 13

 Generally, a chapter 13 plan may modify the rights of creditors holding secured claims. 11 U.S.C. § 1322(b)(2); *Till v. SCS Credit Corp.*, 541 U.S. 465, 474, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). Section 1325(a)(5) of the Bankruptcy Code provides the framework for determining the extent to which secured claims may be modified in a confirmable plan, even over the objection of a secured creditor whose rights are modified by that plan. *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 285 (5th Cir.2000); *See also, In re Stringer*, 508 B.R. 668, 673 (Bankr.N.D.Miss.2014). Section 506(a) "acts as a 'sorter' of claims; claims are categorized as either secured or unsecured depending on the value of the supporting collateral." *Bartee*, 212 F.3d at 285. In general, a "claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *United States v. Ron Pair Enterprises,*

*Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Section 506 thus allows debtors to bifurcate undersecured [9] creditors' claims into two claims: a secured claim to the extent of the value of collateral and an unsecured claim for the balance.[10] However, if the collateral at issue is the debtor's principal residence, then the so-called "anti-modification clause" of § 1322 applies.

 Section 1322 provides that a chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence ...*" § 1322(b)(2)(emphasis added). Accordingly, a chapter 13 debtor may not use § 506(a) to "strip down" a first lien on a debtor's principal residence [11] to the value of the residence, leaving the remainder unsecured. *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). That said, under *Bartee,* when a creditor's junior lien on a chapter 13 debtor's principal residence is completely without supporting collateral value (i.e., when the amount of the senior lien exceeds the value of the property), that debtor may "strip off" that lien on his residence. *Bartee,* 212 F.3d 277. The Fifth Circuit reasoned that after applying § 506(a) and the reasoning in *Nobelman* the holder of a wholly-unse-

---

**9.** As the Fifth Circuit has noted, "an 'undersecured' claim is one supported by collateral valued at less than the amount of the claim." *Bartee,* 212 F.3d at 280, n. 3. Likewise, "[a] 'wholly undersecured' claim is one for which the supporting collateral holds no remaining value after satisfaction of senior encumbrances." *Id.* Other courts also refer to wholly undersecured as claims that are wholly unsecured, or as simply unsecured claims. *See, e.g., In re Dolinak,* 497 B.R. 15, 20 (Bankr.D.N.H.2013).

**10.** The term "strip down" refers to this bifurcation of a claim into secured and unsecured components under § 506(a). *Stringer,* 508 B.R. at 672. The term "strip off" refers to the complete avoidance of a wholly-unsecured junior lien (i.e., when the secured claim is "stripped down" to zero and replaced by an unsecured claim in the same amount). *Bartee,* 212 F.3d at 280, n. 2.

**11.** [D]ebtor's principal residence" is defined in § 101(13A). The parties in this proceeding agree that the property in question is the debtor's principal residence.

cured second lien has no secured claim, rendering § 1322(b) antimodification clause inapplicable. *Id.* at 290–91. Under *Nobelman* and *Bartee*, however, a debtor is prevented from modifying the rights of a partially secured creditor.

## F. Proper Date for Valuing Ocwen's Secured Claim

 Following the hearing on the Motion to Dismiss, the parties were given the opportunity to submit authority for the Court's consideration. In its submission, the Defendant cited only § 502(b) for the proposition that the amount of a creditor's claim is determined as of the petition date. Section 502(b) provides that if an objection to a creditor's proof claim is made, the court must determine the amount of the claim "as of the date of the filing of the petition, and shall allow such claim in such amount," subject to some exceptions that do not apply in this case. Neither *Nobelman* nor *Bartee* considered the proper date for valuation of the collateral or the first lienholder's claim for purposes of determining whether equity exists to support a junior lien.[12] Through its submission, the Defendant informed the Court that it found no other authority on point, and alleged that the cases cited by the Debtors in their submission were inapplicable because they involve situations where a change in the value of the property (and not the senior lienholder's claim) between the petition date and some subsequent date were at issue.

Although that is partially true, the cases cited by the Debtors are still instructive.

The factual determination of whether equity exists to support the second lien depends on the valuation of both the first secured claim and the collateral. Fairness and common sense require that both of these valuations be made as of the same date; otherwise, the comparison fails. Accordingly, cases where courts have considered the proper date of valuation for purposes of determining whether equity is available to support a junior lien are relevant to the Court's consideration of this issue.

The Debtors cite four cases in their submission, one of which is inapplicable and two of which actually support the Defendant's position. One of the cases does not address the proper timing of the valuation of the first lienholder's claim or of the collateral. *In re Dolinak,* 497 B.R. 15 (Bankr.D.N.H.2013)(holding that a so-called "chapter 20" debtor may strip off a wholly unsecured junior lien). Another holds that the proper date for determining whether a claim is secured by a debtor's principal residence (and is therefore subject to the § 1322(b) antimodification clause) is, "like all claims, fixed at the petition date." *BAC Home Loans Servicing v. Abdelgadir (In re Abdelgadir),* 455 B.R. 896, 903 (9th Cir. BAP 2011).[13] The third similarly holds that the petition date is the proper date for valuation of the property for purposes of determining whether a second lien could be stripped off. *Dean v. LaPlaya Investments (In re Dean),* 319 B.R. 474 (Bankr.E.D.Va.2004). The final case cited by the Debtors does support their position, holding that the

---

**12.** *Nobelman* used the property's valuation as of the date of the debtor's modified plan, but the valuation date was not a contested issue in that case. *508 U.S. at 326, 113 S.Ct. 2106.*

**13.** In dicta, the *Abdelgadir* court implies that the value of a claim does not necessarily have to be determined as of the petition date. *Ab-*

*delgadir,* 455 B.R. at 902. However, in the context of determining whether or not equity exists in collateral to support a junior lien, the "value of the claim" necessarily implicates the value of the collateral. It would be unfair to fix the amount of the claim on one day and the value of the collateral on another.

proper valuation date of the collateral for junior lien strip-off purposes is the effective date of the plan, which at the time, the court considered to be 10 days post-confirmation. *Crain v. PSB Lending (In re Crain)*, 243 B.R. 75 (Bankr.C.D.Cal.1999). *Crain* discards the petition date as an option, reasoning that a debtor may be unsure of the use or disposition of the property and that § 506(a) provides that property must be valued in light of the purpose of the valuation and the proposed disposition or use of such property. *Id.* at 83. This Court, like others, does not find the reasoning in *Crain* to be persuasive.

"Courts have not reached a consensus on the proper valuation date of property when the debtor attempts to strip off a wholly unsecured lien. *Dean*, 319 B.R. at 477. This Court is more persuaded by the cases that use the petition date as the appropriate date to value both the collateral and, necessarily, the first lienholder's claim, for the purpose of determining whether any value over the first claim exists in the collateral to support the second lien. The Court's independent review of relevant caselaw reveals that the majority of courts considering this issue have also settled on the petition date as the proper date for valuation in this and other contexts. *See, e.g., Marsh v. U.S. Dep't of Housing and Urban Dev. (In re Marsh)*, 929 F.Supp.2d 852, 855 (N.D.Ill.2013); *In re Gilpin*, 479 B.R. 905, 908 (Bankr. M.D.Fla.2011) (holding the petition date is the appropriate date to value the collateral when the debtors intend to remain in the home); *In re Levitt & Sons, LLC*, 384 B.R. 630, 644 (Bankr.S.D.Fla.2008) (chapter 11 case); *In re Sanders*, 202 B.R. 986 (Bankr. D.Neb.1996); *In re Dinsmore*, 141 B.R. 499 (Bankr.W.D.Mich.1992); *Riley v. Wisconsin Dep't of Rev. (In re Riley)*, 88 B.R. 906, 912 (Bankr.W.D.Wis.1987); *In re Richardson*, 82 B.R. 872, 873 n. 1 (Bankr. S.D.Ohio 1987); and *Brager v. Blum (In re Brager)*, 39 B.R. 441, 443 (Bankr.E.D.Pa. 1984).[14]

The petition date is the "watershed date of a bankruptcy proceeding." *In re Johnson*, 165 B.R. 524, 528(S.D.Ga.1994). As of the petition date, a debtor starts receiving the benefits of the Bankruptcy Code, "creditors' rights are fixed, the bankruptcy estate is created, and the value of the debtor's exemptions is determined." *Id.* (followed by *Dean*, 319 B.R. at 478; *Ford Motor Credit Corp. v. Olson (In re Olson)*, 300 B.R. 96, 98 (Bankr.S.D.Ga.2003); *Western Interstate Bancorp v. Edwards (In re Edwards)*, 245 B.R. 917, 919 (Bankr. S.D.Ga.2000); *Norwest Financial Georgia, Inc. v. Thomas (In re Thomas)*, 177 B.R. 750, 751–52 (Bankr.S.D.Ga.1995)). In addition, the petition date is less easily manipulated by the debtor or creditors than any post-petition date that could be used instead. For example, creditors could delay confirmation by filing objections to confirmation, or the valuation of claims could be inflated or deflated by the addition or subtraction of fees and charges, both valid and ultimately invalid. Intervening circumstances could also affect the appropriate valuation of the collateral. *See, e.g., Marsh*, 929 F.Supp.2d at 854–55 (junior lienor advocated a later date for valuation of the senior claim and the collateral in order to take advantage of post-petition appreciation of the collateral). This Court therefore concludes that the petition date

---

14. While the Fifth Circuit Court of Appeals has not considered the proper date to value collateral for lien-stripping purposes, it has held that the petition date is the appropriate date to value the collateral securing a creditor's claim for purposes of confirming a chapter 13 plan over that creditor's objections as permitted by § 1325(a). *In re Stembridge*, 394 F.3d 383, 388 (5th Cir.2004).

is the proper date to value both the collateral and the claim of any senior lienholders for purposes of determining whether a junior lien may be stripped.

## G. Conclusion

For purposes of the Motion to Dismiss, the parties agree on the relevant facts of the case. Further, there is no contention that the Complaint is insufficient under the standards set forth in *Twombly* and *Iqbal*, or otherwise. The disposition of the Motion to Dismiss rests solely on the Court's legal determination that the petition date is the proper date on which to value Ocwen's secured claim and the collateral. The amount of Ocwen's claim as of the petition date, as reflected in Ocwen's Proof of Claim, minus the agreed valuation of the collateral, equals $669.07. Therefore, as of the petition date, some equity in excess of the first lien existed to support the Defendant's junior lien. Under *Nobelman*, *Bartee*, and §§ 506(a) and 1322(b) of the Bankruptcy Code, even taking all of the Debtors' allegations as true, the Complaint seeks relief that cannot be granted. Accordingly, it is hereby

**ORDERED, ADJUDGED, and DECREED** that the Motion is **GRANTED,** and this case is **DISMISSED.**

**SO ORDERED.**